Abner MITCHELL and Judith Mitchell,
Plaintiffs and Appellants,

v.

Jack BARNES and Don Barnes,
Defendants and Appellees.

Civ. No. 10603.

Supreme Court of North Dakota.

Aug. 13, 1984.

James A. Wright (argued), of Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for plaintiffs and appellants.

James R. Jungroth (argued), of Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for defendants and appellees.

VANDE WALLE, Justice.

Abner and Judith Mitchell appealed from a district court judgment of dismissal entered on a jury verdict in favor of Jack and Don Barnes and from an order denying their motion for a new trial. We affirm.

By written lease, the Mitchells leased farmland to Jack and Don Barnes for a three-year term, commencing December 15, 1975. The lease required basic cash rent of $36,800 per year, based on an average price of $2 per bushel for hard amber durum and No. 1 dark northern spring wheat. The lease contained a provision for additional payments, and a formula for the calculation thereof, if the prices of those commodities exceeded $2 per bushel during the term of the lease. The lease also contained a provision stating:

"Parties of the second part [Barneses] will also do the following:

. . . . .

Leave summer fallow and fall work as is, approximately 20% summer fallow, 20% dug, and 60% fall plowed and dug once; . . ."

In the last year of the lease, the Barneses did not comply with the above-quoted provision. They planted all but 152 acres and did not do any of the fall work.

By summons and complaint served in 1981, the Mitchells brought suit against Jack and Don Barnes for failure to comply with the lease. The second amended complaint alleges that the lease was for 1,840 acres, of which 1,775 acres were tillable; that at the expiration of the lease the Barneses were required to return the land with 355 acres summer-fallowed, 355 acres dug once, and 1,065 acres fall-plowed and dug; and that the Barneses did none of the digging or fall-plowing required and left only 152 acres unplanted, which was summer-fallowed by a new tenant. The Mitchells sought damages of $13,367.50 as the cost of what the summer-fallowing, digging, and fall plowing would have been; damages of $1,337.78 as the Barneses' share of the cost of rock burial; damages of $3,459 because the Mitchells leased the land to another tenant in 1979 on a crop-share basis and the yield on the 203 acres that should have been summer-fallowed was reduced and barley had to be planted

instead of wheat; and damages of $14,372 by which they claim the Barneses were unjustly enriched by seeding 203 acres more than they were entitled to.

The Barneses contend that Abner Mitchell orally modified the contract to eliminate the summer-fallow and fall-work requirements.

The testimony of the Barneses and Abner is in direct conflict. Generally, the Barneses testified that in the spring of 1976 Abner said they didn't have to follow the lease and could farm the land any way they wished; that they cropped the whole farm in 1976 and 1977 and were going to in 1978, but at the Mitchells' request stopped fertilizing in the spring of 1978 and left 152 acres unseeded; that Brent Anderson summerfallowed the 152 acres; and that in 1978, Abner said, "If the boys lost so much money, to make it [up] to them they will not have to do any fall work." Generally, Abner testified that the land was farmed "according to the contract" in 1976; that Abner gave permission to crop all the land in 1977, but that "in 1978 they would follow the contract"; that in the spring of 1978 Abner told Jack Barnes "I want you to summerfallow and do the work like you are supposed to"; and that Abner never in 1976, 1977, or 1978, indicated to the Barneses "that they would not have to leave the property in the condition as spelled out in the lease."

▬ By its verdict in favor of the Barneses, the jury necessarily found that the written lease was orally modified to excuse compliance with the summer-fallow and fall-work requirement. The evidence is sufficient to sustain the verdict.

The issues raised are whether or not (1) the trial court erred in permitting testimony that the written lease was modified by a subsequent oral agreement; (2) the jury should have been instructed on estoppel; (3) the trial court erred in refusing to admit expert testimony relating to the average county yield for barley in 1979; (4) income tax returns of Bradley and Craig Barnes should have been received in evidence; and (5) the trial court erred in admitting testi-

mony that the Mitchells were overpaid for 1977 and 1978 rent.

The Mitchells first assert that the admission of testimony relating to oral modification of the written lease contravenes § 9-09-06, N.D.C.C., which provides:

"*9-09-06. Alteration of written contract.*—A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise. An oral agreement is executed within the meaning of this section whenever the party performing has incurred a detriment which he was not obligated by the original contract to incur."

▬ Thus it is clear that a written contract may be modified by an executed oral agreement. Testimony relating to an oral agreement modifying a written contract is admissible. The question here is whether or not the Barneses incurred a detriment they were not obligated by the original contract to incur. The Mitchells contend that the Barneses "did not incur an additional detriment under the alleged oral agreement. Indeed, they obtained a benefit because they did not have to do the costly summer fallowing, digging and fall work."

The comments of this court in *Gulden v. Sloan,* 311 N.W.2d 568, 572 (N.D.1981) are instructive and we quote extensively from that opinion:

"The North Dakota Century Code provides that 'good consideration' may be any benefit conferred or detriment suffered. § 9–05–01, N.D.C.C. Both benefit and detriment have technical meaning and neither the benefit to the promissor nor detriment to the promissee need be actual. Detriment, as used in testing the sufficiency of consideration, means legal detriment as distinguished from detriment in fact. 'It means giving up something which immediately prior thereto the promissee was privileged to retain, or doing or refraining from doing something which he was then privileged not to do, or not to refrain from doing.' *Id.* [Citation omitted.]

"This court in *Divide County v. Citizens State Bank of Ambrose*, 52 N.D. 29, 30, 201 N.W. 693, 693–94 (1924), held that a promise to release a seed lien is good consideration for a promise to pay money, even though the lien was subsequent to another lien which would exhaust the value of the land. After noting the argument that the county gave up nothing of value, this court stated:

'It is elementary that a promise is a good consideration for a promise, even though the thing that is promised may be of no real benefit to the promiser. It is sufficient if it be a detriment to the promisee, and a detriment in this connection may consist in changing or agreeing to change or relinquish one's legal right *regardless of the value of that right.*' [Emphasis added.] 201 N.W. at 694.

"This court followed that rule in *Keen v. Larson*, 132 N.W.2d 350, 357 (N.D. 1964), holding that a compromise of a bona fide controversy constitutes a good consideration for a promise, regardless of allegations that the claim was doubtful. This court said:

'A legal detriment may be sustained by a promisee by the surrender of a legal right, whether such right has substantial value or not.' [Citation omitted.] *Id.*"

We believe the expense and risk of loss borne by the Barneses in planting a crop, in reliance on Abner Mitchell's statement that they did not have to follow the lease and could farm the land any way they wished, on land that otherwise would have been summer-fallowed, constituted a detriment they were not obligated by the original contract to incur. It does not matter that it had little, if any, value to the Mitchells. *Gulden v. Sloan, supra.* Detriment need not even be actual.

The Barneses also gave up their right to perform the summer-fallowing of the acres they did not plant in 1978—as well as the fall plowing and digging that year—with their own equipment and labor, in reliance on Abner Mitchell's statement in 1978 that they would not have to perform those operations. The Mitchells now propose to charge them for those operations at rates charged by custom operators. We believe that this constitutes a detriment the Barneses were not obligated by the original agreement to incur. But for Abner Mitchell's statement in 1978, the Barneses would have performed the operations with their own labor and machinery at less cost than that charged by the custom operator. The Barneses thus changed their position and incurred a detriment as a result of that change of position. *Compare Cargill, Inc. v. Kavanaugh*, 228 N.W.2d 133, 138 (N.D. 1975), where Cargill did not change "its relative position with Kavanaugh as a result of the alleged oral agreement."

The next issue is whether or not the jury should have been instructed on estoppel. Over the Mitchells' objection, the trial court instructed the jury as follows:

"If you find that the plaintiffs herein, or one of the plaintiffs representing the other plaintiff herein, made statements to the defendants, or either or both of them, which statements would cause the defendants not to fulfill the contract in question as written, and if you further find that the defendants relied upon the statements of the plaintiff or plaintiffs, and if you further find that the plaintiffs either acted or did not act based upon such statements and that said action was of such a character as to change the position or status of the defendants, the plaintiffs cannot enforce that portion of the contract which plaintiffs told the defendants not to perform."

The Mitchells do not assert that the instruction incorrectly stated the law. Their contention is that estoppel is an affirmative defense which must be raised in the pleadings under Rule 8(c), N.D.R.Civ.P., and that the Barneses waived the defense by failing to plead it. They assert that estoppel was first suggested by the Barneses in a proposed jury instruction and that they "were not properly apprised of the defense and were prejudiced by the submission of

an instruction on an issue that was not properly raised before trial."

We agree with the Barneses that "[t]he answer in this case did not use the magic word 'estoppel', but the answer did state the facts relied upon by Barnes." Paragraphs 4 and 6 of the Barneses' answer to the complaint alleged:

"Specifically alleges that in 1977, Abner Mitchell told them to go ahead and crop it all if they so desired and that, in fact, he told them the same thing in 1978, but that after they had all of said premises except approximately 100 acres ready for cropping, Abner Mitchell stated that he might rent it to someone else, at which time Jack Barnes stated that the boys should have the land again as they lost so much money in the previous years and that Abner Mitchell then stated that they need not do any fall work and that this would make up for the loss to them.

.     .     .     .     .

"Specifically denies that the Plaintiffs, or either of them, were damaged by any action of the Defendants, or either of them, and specifically alleges that the summerfallow and fall work was not done as per the lease because Abner Mitchell stated that they need not do so because they had lost so much money on the farm, due to weather conditions and that he was not going to let them farm it again, so that to be completely fair with the boys, he would excuse them from any work required under said lease, and that since that discussion, the Defendants, nor either of them, have heard nothing from Abner Mitchell or Judith Mitchell until the Complaint was served upon them herein."

■ While it did not use the word "estoppel," the answer filed by the Barneses did provide the Mitchells with "fair notice of the nature of the defense." 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1274 (1969). The court in *Barnwell & Hays, Inc. v. Sloan*, 564 F.2d 254, 255 (8th Cir.1977), met with a similar contention with regard to "waiver," said:

"Waiver is an affirmative defense which must be affirmatively pleaded. Defendants' answer did not contain the word 'waiver.' The failure to use this specific terminology, however, does not necessarily mean that the answer did not raise the affirmative defense ...." [Citations omitted.]

The court went on to state, 564 F.2d at 256:

"The Federal Rules were designed to liberalize pleading requirements. To hold that defendant's answer was insufficient to inject the issue of waiver into the case would impose a requirement of undue formalism which is inconsistent with that liberal purpose." [Citations omitted.]

We agree and adopt that reasoning with respect to estoppel.

In addition, the Mitchells' assertion that they "were not properly apprised of the defense" loses much of its force when the record shows that they filed a pretrial motion to prevent testimony "to the effect that the Plaintiff, Abner Mitchell, informed the Defendants that they did not have to do the summer fallowing, digging and fall plowing as required under the contract." The Barneses' resistance to the motion specifically mentioned estoppel. In our view, the Mitchells knew precisely the nature of the Barneses' defense.

■ The next issue raised is whether or not the trial court erred in refusing to admit deposition testimony as to the average county barley yield in 1979. The Mitchells assert that if 203 additional acres had been summer-fallowed by the Barneses in 1978 as required by the lease—instead of planted to sunflowers—wheat, rather than barley, would have been planted on that land in 1979 and that "[t]estimony of the county average would have assisted the trier of fact in determining Appellants' damages."

As we noted earlier, by its verdict in favor of the Barneses the jury must have found that the written lease was orally modified to excuse compliance with the summer-fallow requirement. We have already determined that the evidence is suffi-

cient to sustain the verdict. Because the jury found that the Barneses were excused from summer-fallowing the 203 acres complained of, we discern no possibility of prejudice to the Mitchells from the refusal to admit testimony of the average county barley yield in 1979. The error, if any, was harmless. Rule 61, N.D.R.Civ.P.

 The Mitchells next assert that income tax returns of Bradley and Craig Barnes, sons of Jack Barnes, for the years 1976, 1977, and 1978 were not relevant and should not have been admitted. The only ground for the objections posited to the trial court was that Bradley and Craig were not parties to the action or the contract. The testimony shows, however, that it was Bradley, Craig, and Jeff (Don Barnes's son) who actually farmed the land in 1976, and that Bradley and Craig farmed it in 1977 and 1978—not Jack and Don—and that the Mitchells knew it.

On appeal, the Mitchells assert several other grounds on which the tax returns were irrelevant. In our view, the matters raised with regard to the tax returns go to weight, rather than admissibility. The tax returns were relevant. It was the fact that the "boys" lost money on the land which the Barneses assert provided the impetus for Abner Mitchell to excuse compliance with the lease. The Mitchells had the opportunity to, and did, cross-examine about the returns to show that not all of the expenses and losses incurred were attributable to farming the Mitchell land.

The final issue raised is whether or not the trial court erred in admitting testimony that the Mitchells were overpaid for 1977 and 1978 rent. The Mitchells assert that evidence of overpayment was irrelevant and that the matter was not raised in the pleadings.

We believe the evidence of overpayment was relevant. The Mitchells were seeking to recover under a theory that the Barneses were unjustly enriched by planting more acres than they were allowed to plant under the lease. Evidence that the Mitchells may have been unjustly enriched through overpayment of rent is relevant to the Mitchells' claim. We also believe that the Mitchells had an adequate opportunity to meet the evidence of overpayment.

Our review of the denial of the Mitchells' motion for a new trial is limited to a determination of whether or not the trial court abused its discretion. *Kerzmann v. Rohweder*, 321 N.W.2d 84 (N.D. 1982). We determined the issues raised on appeal from the judgment adversely to the Mitchells. We also determined that the evidence is sufficient to sustain the verdict. The trial court did not abuse its discretion in denying the motion for a new trial.

For the reasons stated, the judgment and the order denying a new trial are affirmed.

ERICKSTAD, C.J., and PEDERSON and SAND, JJ., concur.

GIERKE, J., concurs in the result.