2009 ND 88

**Gary RUTHERFORD, d/b/a Classic Roadsters, Ltd., Plaintiff and Appellant**

v.

**BNSF RAILWAY COMPANY, Defendant and Appellee.**

No. 20080237.

Supreme Court of North Dakota.

May 22, 2009.

Rehearing Denied June 24, 2009.

William J. Delmore (argued) and Garrett D. Ludwig (appeared), Kelsch, Kelsch, Ruff & Kranda, Mandan, for plaintiff and appellant.

Mark R. Hanson (argued) and Jason R. Crance (on brief), Nilles, Ilvedson, Plambeck & Selbo, Ltd., Fargo, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Gary Rutherford, d/b/a Classic Roadsters, Ltd. ("Rutherford"), appeals from a district court judgment granting BNSF Railway Company's ("BNSF") motion for summary judgment. We affirm.

I

[¶ 2] The property which is the subject of this case is located at 1617 Main Avenue, Fargo, North Dakota. At all times pertinent to this case, the land has been owned by BNSF, formerly known as Burlington Northern Railroad Company. In 1981, Rutherford became a sublessee to a lease in which BNSF was a lessor and Offutt Investment Company ("Offutt") was a lessee; Offutt owned the building and improvements located on the real property. In May 1990, Rutherford bought all of Offutt's interests in the building and improvements.

[¶ 3] Rutherford and BNSF entered into a term lease dated January 1, 1991, commencing that day and expiring on December 31, 2005. The material terms of the lease were identical to the terms Rutherford agreed to when he subleased the property from Offutt. In 1994, Rutherford became aware of the presence of two fuel tanks located beneath the soil of the property.

[¶ 4] Upon termination of the parties' term lease on December 31, 2005, Rutherford remained in possession of the premises. In November 2006, BNSF served Rutherford with a notice of termination of the lease and tenancy, which stated the termination would be effective December 31, 2006. BNSF served Rutherford with a

notice of intent to evict on January 12, 2007, and BNSF commenced an eviction action by serving Rutherford and JoAnn Rutherford ("Rutherfords") on January 31, 2007.

[¶ 5] In the eviction, the district court ordered judgment in favor of BNSF. The district court granted BNSF "immediate possession and ownership rights to any and all improvements, buildings and structures on the property[.]" The district court required the Rutherfords to "immediately physically remove themselves from the premises and improvements described herein." The district court found: "Among other things, the lease requires, upon its termination, that ... Rutherford vacate and surrender the premises free and clear of all buildings, structures, foundations, footings, materials, signs or sign boards, debris or other articles or facilities not belonging to [BNSF] and that the premises be restored to a neat and orderly condition satisfactory to [BNSF]." The district court entered the following conclusion of law: "Pursuant to North Dakota law and the terms of the lease, [BNSF] is entitled to immediate possession of the property, including a judgment for possession of all buildings and structures on the property." On March 16, 2007, the Rutherfords vacated the property. The district court entered a judgment evicting the Rutherfords from the premises on April 13, 2007. The judgment evicting the Rutherfords was not appealed.

[¶ 6] On January 18, 2007, while the eviction proceeding was pending, Rutherford filed suit commencing the action that is now before this Court. In his complaint, Rutherford alleged causes of action based on: nuisance, negligence, and "unconscionable lease terms fair dealings." The first two causes of action were solely based on the underground fuel tanks. First, on the nuisance claim, Rutherford alleged BNSF was liable under a nuisance theory because it leased Rutherford real property knowing it was contaminated and because BNSF's polluted subsoil created a nuisance that caused and continues to cause injury and damage to Rutherford's properties. Second, Rutherford asserted BNSF owed him a duty not to pollute the subsoil beneath and adjacent to his building, and BNSF breached this duty, which constituted reckless conduct. Third, Rutherford contended because BNSF required its tenants subletting a portion of the premises from Rutherford to indemnify BNSF for contamination on the property, whether or not the contamination was caused by Rutherford or his sublessees, the terms of the lease were unconscionable and caused Rutherford to suffer economic damage. Rutherford also asserted BNSF failed to notify him of any intent to cancel the lease or evict while BNSF knowingly watched him make substantial improvements to the building. Rutherford requested relief for special damages.

[¶ 7] BNSF filed an answer on August 21, 2007. BNSF filed a motion to amend its answer, and the district court entered an order granting its motion on November 23, 2007. Rutherford filed a motion to amend his complaint, and the district court entered an order granting his motion on November 23, 2007. On December 6, 2007, BNSF filed an amended answer, and on December 21, 2007, Rutherford filed a reply to BNSF's amended answer.

[¶ 8] On April 3, 2008, BNSF filed a motion for summary judgment. BNSF alleged all of Rutherford's claims were barred by statutes of limitations. BNSF also asserted Rutherford lacked standing to bring a claim against BNSF for negligence, nuisance, and unconscionable lease terms, because his claims were based on damage to property in which Rutherford no longer had any legal or equitable right

to possess. Further, BNSF contended the lease terms were not unconscionable as a matter of law. On April 23, 2008, Rutherford filed an amended complaint, and BNSF filed an answer on April 28, 2008. On May 5, 2008, Rutherford filed a response in opposition to BNSF's motion for summary judgment. On June 9, 2008, the district court entered an order granting BNSF's motion for summary judgment, and on June 20, 2008, an amended order granting summary judgment was entered. The district court held the lease was not unconscionable, and the statute of limitations barred any claims pertaining to the underground fuel tanks located on the property. Rutherford appeals.

## II

[¶ 9] This is an appeal from a judgment granting summary judgment. This Court's standard of review for summary judgment is well-established:

Whether summary judgment was properly granted is a question of law which we review de novo on the entire record. On appeal[,] this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

*Hopfauf v. Hieb*, 2006 ND 72, ¶ 6, 712 N.W.2d 333 (quoting *Heart River Partners v. Goetzfried*, 2005 ND 149, ¶ 8, 703 N.W.2d 330).

## III

[¶ 10] The district court held the statute of limitations time barred Rutherford's claims pertaining to the underground fuel tanks located on the property. The district court noted two sections of the Century Code govern the statute of limitations for bringing a cause of action arising out of a contract obligation, N.D.C.C. §§ 28–01–15, 28–01–16. According to N.D.C.C. § 28–01–15(2), "[a]n action upon a contract contained in any conveyance or mortgage of or instrument affecting the title to real property except a covenant of warranty" must be commenced within ten years after the claim for relief has accrued. Section 28–01–16(1), N.D.C.C., provides, "[a]n action upon a contract, obligation, or liability, express or implied, subject to the provisions of sections 28–01–15 and 41–02–104[,]" must be commenced within six years after the claim for relief has accrued. The district court held it is undisputed that Rutherford knew of the existence of the tanks since 1994. From this, the district court determined it was irrelevant whether N.D.C.C. §§ 28–01–15 or 28–01–16 controlled this issue, because under either statute, Rutherford's claims pertaining to the underground fuel tanks were time barred.

[¶ 11] On appeal, Rutherford does not contend the district court erred by holding his claims pertaining to the underground fuel tanks were time barred by the statute of limitations, because these claims were brought within the statute of limitations. Rather, he asserts BNSF's statute of limitations defense should be precluded by the doctrine of equitable estoppel. In *Ellis v. N.D. State Univ.*, 2009 ND 59, ¶ 17, 764 N.W.2d 192, this Court held: "We have recognized that equitable estoppel may preclude the application of a statute of limitations by a party whose actions induce another party to not file a claim within a prescribed statutory period." (Citations omitted).

[¶ 12] Before addressing the merits of this issue, we need to determine whether

Rutherford properly raised the issue of the doctrine of equitable estoppel, barring application of the statute of limitations before the district court. BNSF asserts Rutherford cannot raise the doctrine of equitable estoppel on appeal, because he did not raise this issue before the district court. While Rutherford concedes he did not use the term "estoppel" in any pleadings, he contends he sufficiently pleaded and presented this issue to the district court.

[¶ 13] This Court has held: "It is axiomatic that an issue or contention not raised or considered in the lower court cannot be raised for the first time on appeal from judgment." *John T. Jones Constr. Co. v. City of Grand Forks*, 2003 ND 109, ¶ 18, 665 N.W.2d 698 (quoting *Bard v. Bard*, 380 N.W.2d 342, 344 (N.D. 1986)). In *First Nat'l Bank & Trust Co. v. Jacobsen*, 431 N.W.2d 284, 285 (N.D.1988), the district court granted First National Bank's motion for summary judgment. The Jacobsens appealed, raised the claims of accord and satisfaction and estoppel, and asserted they preserved these claims by raising the issue in response to First National Bank's motion for summary judgment. *Id.* at 286. This Court held:

> Accord and satisfaction, estoppel, failure of a condition precedent, misrepresentation and breach of a fiduciary duty are all matters "constituting an avoidance or affirmative defense" which should have been pleaded in the answer. Although Jacobsens may have raised some of these matters in their response to the Bank's motion for summary judgment, they neither raised them in their answer nor in a motion to amend their answer to include them. We conclude, therefore, that they cannot raise them on appeal.

*Id.* at 287 (citation and footnote omitted). BNSF asserts because Rutherford did not plead equitable estoppel in his complaint,

amended complaint, or reply brief to BNSF's amended answer and counterclaim, according to this Court's holding in *Jacobsen,* Rutherford cannot raise the doctrine of equitable estoppel for the first time on appeal. *See id.* A review of the record indicates Rutherford did not plead or present the issue of equitable estoppel in his complaint, amended complaint, or reply brief to BNSF's amended answer and counterclaim.

[¶ 14] In *Mitchell v. Barnes,* 354 N.W.2d 680, 681 (N.D.1984), the Mitchells appealed from a trial court judgment of dismissal entered on a jury verdict in favor of the Barneses. On appeal, the Mitchells asserted the trial court erred by instructing the jury on estoppel, because estoppel is an affirmative defense which must be raised in the pleadings, and the Barneses waived the defense by failing to plead it. *Id.* at 683. The Mitchells contended the Barneses first suggested estoppel in a proposed jury instruction and they "were not properly apprised of the defense and were prejudiced by the submission of an instruction on an issue that was not properly raised before trial." *Id.* at 683–84. This Court held, while the Barneses "did not use the magic word 'estoppel,'" the Barneses' answer provided the Mitchells with "fair notice of the nature of the defense." *Id.* at 684 (citation omitted).

[¶ 15] In the present case, both parties relied on *Mitchell.* Rutherford concedes he did not use the word "estoppel" at the trial court level; however, he contends his pleadings clearly put BNSF on fair notice of the nature of his claim for recovery under an estoppel theory. Rutherford does not further explain how his pleadings put BNSF on fair notice of his estoppel theory claim, and a review of Rutherford's pleadings reveals the pleadings did not put BNSF on notice of an estoppel theory claim.

[¶ 16] BNSF correctly notes this Court's ruling in *Mitchell* simply provides if an answer adequately raises estoppel, the failure of a party to use the word "estoppel" does not preclude application of the doctrine, as long as the opposing party is provided fair notice of the claim. *Id.* Rutherford did not use the word "estoppel" in his pleadings, nor did he provide BNSF with fair notice of the claim. Rutherford did not properly raise the issue of the doctrine of equitable estoppel before the district court; therefore, Rutherford is precluded from raising the doctrine of equitable estoppel on appeal, and we will not address whether BNSF's statute of limitations defense should be precluded by the doctrine of equitable estoppel. We affirm the district court judgment holding the statute of limitations time barred Rutherford's claims pertaining to the underground fuel tanks located on the property.

[¶ 17] The district court did not hold the statute of limitations barred Rutherford's claims for unconscionable lease terms. On appeal, Rutherford contends the district court should have held the statute of limitations for his claims against BNSF for unconscionable lease terms did not begin to run until January 12, 2007; therefore, these claims were not time barred by the statute of limitations. In the alternative, Rutherford argues the doctrine of equitable estoppel precludes BNSF's statute of limitations defense regarding Rutherford's claims for unconscionable lease terms. Because the district court did not hold the statute of limitations barred Rutherford's claims for unconscionable lease terms, we have not examined the application of the statute of limitations to Rutherford's claims for unconscionable lease terms, and we make no comment.

IV

[¶ 18] The district court held the parties' lease was not unconscionable. Before the district court, Rutherford asserted the lease was unconscionable because BNSF did not reimburse him for his building on BNSF's property upon eviction. The district court held the lease unambiguously provided Rutherford was required to remove all structures built on the property upon expiration of the lease or eviction. Rutherford also contended the parties had an implied continuation of their lease because BNSF did not have a history of evicting tenants. The district court held: "Rutherford cites to no legal authority to support his theory that the terms of the lease are unconscionable simply because he believed BNSF would not evict him, nor does the wording of the lease indicate that BNSF would not terminate the lease upon expiration." In addition, the district court noted the lease clearly provided an end date of December 31, 2005. Further, the district court indicated Rutherford argued the lease was unconscionable because "the underground fuel oil tanks prevented him from obtaining a subtenant because the lease requires Rutherford, and any potential subtenants, to agree to paragraph 8 of the lease which holds the tenant responsible for any harm arising out of hazardous conditions on the property." The district court rejected this argument and held, "paragraph 8 of the lease holds Rutherford and any potential subtenant responsible for harm 'caused by, contributed to, or aggravated by,'" Rutherford. The district court added neither Rutherford nor a subtenant could be held responsible for harm caused by the underground fuel tanks because a different tenant placed them on the property. The district court also found "BNSF was willing to alter paragraph 8 of the lease to make it absolutely clear that any potential subtenant would not be liable for any harm arising out of the presence of the existing underground

fuel tanks." Rutherford does not challenge this on appeal.

[¶ 19] While the district court declared several of the lease provisions conscionable, on appeal, Rutherford abandoned all but one of the arguments he presented to the district court. On appeal, Rutherford only asserts paragraph 11(b) of the lease is unconscionable. Rutherford argues:

As soon as BNSF notified Rutherford on November 21, 2006 that his lease would be terminated (i.e., not renewed), this marked the moment that Rutherford was placed in a completely unique position. This was the first time in history that the BN and/or BNSF failed to renew the leases of one of its Maine Avenue tenants who was current with all lease payments. Furthermore, by terminating Rutherford's lease, BNSF believed that it had found an unconscionable loophole in paragraph 11(b) that granted it the authority to take Rutherford's building without having to provide him with any form of just compensation.

Paragraph 11(b) of the parties' lease provides:

If Railroad shall require the Premises for railroad purposes at any time during the term, it may terminate this lease upon written notice of not less than six (6) months. In case of such termination Railroad shall purchase from Lessee any building or buildings owned by Lessee on the Premises, but shall not purchase equipment or movable fixtures or any of the contents thereof which are capable of being removed without damage to the building or buildings. Railroad shall pay a sum equal to the fair market value of said building or buildings at the time such notice is given. If the parties fail to agree on the said value, the same shall be determined by three disinterested appraisers selected in the manner hereinbefore provided, and the value agreed upon by any two of said apprais-

ers shall be paid by Railroad, as Lessee's sole compensation and remedy for the termination. In the event of termination of this lease pursuant to notice in accordance with this paragraph 11(b), Lessee, before the termination date fixed in said notice, shall remove from the Premises Lessee's property not purchased by Railroad, and if it fails to do so, Lessee hereby grants Railroad the absolute right to remove such property at the cost of Lessee, or keep, convey, destroy, or otherwise dispose of the property in any way Railroad chooses and, in addition, Lessee agrees to pay any net cost incurred by Railroad in doing so.

BNSF did not terminate the lease "for railroad purposes[.]" However, paragraph 11(b) is pertinent to this case because it is referenced in paragraph 12, and paragraph 12 was the basis of the eviction proceeding. The Notice of Termination of Lease/Tenancy stated:

You must, prior to the end of December 31, 2006, remove at your sole cost and expense, and in accordance with Paragraph 12 of the Lease, all buildings, structures, foundations, footings, materials, signs or signboards, debris or other articles or facilities owned or used by you or placed on, above or below the surface of the premises by you or by any person, firm or corporation or former lessee. If said buildings, structures, foundations, footings, materials, signs or signboards, debris or other articles are not removed from the premises prior to the end of December 31, 2006, you are contractually liable for all losses and/or damages which BNSF may sustain or become liable for resulting from your failure to restore the premises as required under the Lease.

Paragraph 12 provides:

(a) Except as otherwise provided in paragraphs 3(c) and 11(a) hereof, before

the lease expires Lessee shall, at its own sole cost and expense, remove or cause to be removed all buildings, structures, foundations, footings, materials, signs or signboards, debris or other articles or facilities owned or used by Lessee or placed on, above or below the surface of the Premises by Lessee or by any person, firm or corporation or former Lessee. Lessee agrees to restore and level the Premises to a condition satisfactory to Railroad.

(b) It is expressly understood by Lessee that until such time as the Premises are surrendered to Railroad free and clear of all buildings, structures, foundations, footings, materials, signs or signboards, debris or other articles or facilities not belonging to Railroad, and the Premises are restored to a neat and orderly condition satisfactory to Railroad, Lessee shall be liable to Railroad for such rental, including taxes, as Railroad may from time to time determine. Lessee shall also be liable to Railroad for any and all losses and/or damages which Railroad may sustain or become liable for resulting from the failure of Lessee to restore the premises to a neat and orderly condition. Railroad may at its own sole election dispose of any such property or improvements as provided in Section 11(b) above.

### A

[¶ 20] This Court has held the doctrine of unconscionability allows a court to "deny enforcement of a contract because of procedural abuses arising out of the contract's formation and substantive abuses relating to the terms of the contract." *Strand v. U.S. Bank Nat'l Ass'n ND*, 2005 ND 68, ¶ 4, 693 N.W.2d 918 (citing *Weber v. Weber*, 1999 ND 11, ¶ 11, 589 N.W.2d 358). When a trial court determines whether a contractual provision is unconscionable, it is to:

look at the contract from the perspective of the time it was entered into, without the benefit of hindsight. The determination to be made is whether, under the circumstances presented in the particular commercial setting, the terms of the agreement are so one-sided as to be unconscionable. The principle underlying the Code's unconscionability provisions is the prevention of oppression and unfair surprise.

*Id.* (quoting *Construction Assocs., Inc. v. Fargo Water Equip. Co.*, 446 N.W.2d 237, 241 (N.D.1989)).

[¶ 21] The issue of whether a contractual provision is unconscionable is a question of law. *Id.* at ¶ 5. However, "the determination of unconscionability is dependent upon the factual circumstances of the case." *Id.* (citations omitted). "Because the determination of unconscionability is fact specific, courts must 'consider such claims on a case-by-case basis,' and assess the totality of the circumstances." *Id.* (citations omitted).

[¶ 22] When this Court determines whether a contractual provision is unconscionable, we employ a two-pronged framework. *Id.* at ¶ 7. The first prong pertains to procedural unconscionability, "which encompasses factors relating to unfair surprise, oppression, and inequality of bargaining power[.]" *Id.* (citation omitted). Rutherford did not argue unfair surprise, oppression, or inequality of bargaining power. The second prong pertains to substantive unconscionability, "which focuses upon the harshness or one-sidedness of the contractual provision in question." *Id.* (citation omitted). Rutherford did not clearly argue the lease provisions in question were harsh or one-sided, but blends the argument on unconscionability with his assertion that the lease was perpetual, contrary to its express terms, and the lack

of compensation for the building upon termination. To prevail on an unconscionability claim, "a party alleging unconscionability must demonstrate some quantum of both procedural and substantive unconscionability, and courts are to balance the various factors, viewed in totality, to determine whether the particular contractual provision is 'so one-sided as to be unconscionable.' " *Id.* at ¶ 12 (citation omitted).

### B

[¶ 23] Rutherford appears to be asserting the analysis of this claim should be modified because he was doing business with the railroad, which at oral argument he referred to as "a quasi-government agency." The fact that one of the parties to this lease is a railroad does not alter our analysis of whether the particular lease provision is conscionable:

> [C]ourts have reasoned that a railroad has no duty, as a common carrier, to lease or permit others to use its real property, and hence, in voluntarily contracting to do so, it acts in a private capacity and is as free as any other private party owner to impose any condition it desires and the lessee or licensee is willing to accept.

E.R. Tan, Annotation, *Validity, Construction, and Effect of Agreement, in Connection with Real–Estate Lease or License by Railroad, for Exemption from Liability or for Indemnification by Lessee or Licensee, for Consequences of Railroad's Own Negligence,* 14 A.L.R.3d 453, § 2 (1967). In addition:

> [Railroad companies] owe no duty to the public to exercise care with respect to buildings on their own rights of way, and that they may exact their own terms in granting permission to place them there. Leases of that nature involve ordinary contractual matters in which the public welfare is not concerned. In

making such leases, the railroad company acts not as a common carrier performing duties imposed upon it as such by law independent of contract, but rather as any other owner of property. *Speltz Grain & Coal Co. v. Rush,* 236 Minn. 1, 51 N.W.2d 641, 644 (1952).

### C

[¶ 24] Paragraphs 11(b) and 12 provided that, prior to the expiration of the lease, Rutherford was required, at his own sole cost and expense, to remove or cause to be removed all buildings, structures, foundations, footings, materials, signs or signboards, debris or other articles or facilities owned or used by Rutherford. The lease terms stated Rutherford agreed to leave the premises in a condition satisfactory to BNSF. When a real estate lease is entered into, it is not uncommon practice for the parties to include a provision regarding which property shall remain upon, or can be removed from, the leased premises upon the expiration of the lease. *See* 35A Am.Jur.2d *Fixtures* §§ 16, 19 (2001). This Court has held: "Notwithstanding the physical characteristics of a fixture, parties may agree to give it the legal character of personalty." *Marsh v. Binstock,* 462 N.W.2d 172, 174 (N.D.1990) (citations omitted); *see Hasse v. Dewitz,* 76 N.D. 108, 110, 33 N.W.2d 625, 626 (1948) (citation omitted).

[¶ 25] The lease also provided if Rutherford failed to remove his property before the termination of the lease, BNSF had the right to keep the property, or to dispose of it in any way of BNSF's choosing. Rutherford did not remove his property upon termination of the lease. "The tenant's right to remove articles attached to the realty, by reason of express agreement, may be lost by his or her surrender of the leasehold without exercising the right of removal." 36A C.J.S. *Fixtures*

§ 24 (2003) (footnote omitted). In addition: "When tenants retain ownership of structures they erect on property and are allowed to remove the structures, removal generally must occur within a reasonable period after the end of the tenancy; if the structure is not removed, it becomes the property of the landlord because it is affixed to the land." 49 Am.Jur.2d *Landlord and Tenant* § 410 (2006).

[¶ 26] "When the parties to a lease agree upon the classifications of property which shall remain upon or can be removed from the leased premises upon the expiration of the lease, their rights are determined, not by the law relating to fixtures, but by the law of contracts." 35A Am.Jur.2d *Fixtures* § 19 (2001) (footnote omitted). Common law on this issue is well-established:

> At common law the general rule is that a building affixed to the land by a tenant becomes a part of the land and thus becomes the property of the owner of the land. But the exception has long been recognized that a tenant with his landlord's consent, express or implied, may retain the ownership of a building which he has erected on the leased land for his own benefit. In such a situation the building is ordinarily regarded as personalty rather than a part of the realty. This exception has ordinarily been limited to those buildings which are capable of being removed without substantial damage to the land. And if such a building is not removed by the tenant at the expiration of his tenancy but is left standing on the land when the landlord re-enters it is to be regarded, in the absence of a contrary agreement, as the property of the landlord who, in that case, has no obligation to pay the former tenant its value.

*Nicholson v. Altona Corp.*, 320 F.2d 8, 10–11 (3d Cir.1963) (footnotes omitted).

Rutherford has not provided, nor have we found, any statutory provision in conflict with common law. The lease provisions at issue in the case before this Court coincide with common law. Rutherford has failed to establish that the terms of the lease are substantively unconscionable.

D

[¶ 27] Within his unconscionability argument, Rutherford asserts the parties' lease was perpetual, contrary to the holding of the trial court that the parties had entered a term lease, and he suggests BNSF was required to provide him with a six-month notice prior to the termination of his lease. However, Rutherford also asserts: "Rutherford remained on the leased premises after December 31, 2005, thus making him a holdover tenant with an implied one year lease[,]" and "following the expiration of the original lease, Rutherford and BNSF, by way of holdover, entered into a one year lease." *See also* N.D.C.C. § 47–16–06. From this, Rutherford concedes that the parties' lease was not perpetual.

E

[¶ 28] On appeal, Rutherford asserts the district court erred by not finding he is entitled to economic damages under the doctrine of equitable estoppel. Rutherford did not present this argument before the district court. As previously explained, if a party fails to properly raise an issue or argument before the district court, the party is precluded from raising that issue or argument on appeal.

V

[¶ 29] We considered the remaining issues and arguments and determined they are either unnecessary to this decision or without merit. We affirm the district court judgment.

[¶ 30] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and DALE V. SANDSTROM, JJ., and M. RICHARD GEIGER, D.J., concur.

[¶ 31] The Honorable M. RICHARD GEIGER, D.J., sitting in place of CROTHERS, J., disqualified.