**FILED**
**IN THE OFFICE OF THE**
**CLERK OF SUPREME COURT**
**FEBRUARY 16, 2023**
**STATE OF NORTH DAKOTA**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 16

Larson Latham Huettl LLP,                                      Plaintiff and Appellee

     v.

Travis D. Iversen,                                                  Defendant and Appellant

## No. 20220198

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Dann E. Greenwood, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Samuel G. Larson (argued) and Gregory C. Larson (on brief), Bismarck, N.D., for plaintiff and appellee.

Travis D. Iversen, self-represented, Bismarck, N.D., defendant and appellant.

**Tufte, Justice.**

[¶1] Travis D. Iversen appeals from a judgment in favor of the appellee, Larson Latham Huettl, LLP (hereafter "LLH"), and an order denying relief from judgment under N.D.R.Civ.P. 59(j). He argues that several genuine issues of material fact remain, precluding summary judgment. He also argues the district court abused its discretion in denying his motion under Rule 59(j). We affirm the judgment and the order denying Iversen's Rule 59(j) motion.

I

[¶2] Iversen is an attorney who was employed by LLH from February 2019 until July 2021. He signed an employment agreement with LLH in May 2019. The applicable sections of the employment agreement are:

> This agreement is between Larson Latham Huettl LLP (LLH) and Travis D. Iversen (Associate).
> WHEREAS, LLH has hired Associate and accepted the services of Associate as an associate attorney; and
> WHEREAS, Associate has accepted LLH's offer of employment; and
> WHEREAS, the parties wish to memorialize the terms of the existing employment as set out below effective February 5, 2019.
> ....
> 1. <u>Salary.</u> Associate will be paid a base salary pursuant to agreement with LLH and an incentive commission as shown on the attached Schedule A. Associate will be required to bill out the average number of hours per week as shown on Schedule A commensurate with Associate's base salary.
> ....
> 3. <u>Billed Hours Credited.</u> Associate will be credited with hours that are billed out to clients that are approved by a partner of LLH. Associate may be credited for billable hours, administration hours, or client relation hours.
> It is possible, at the discretion of the partners of LLH, that some of Associate's hours may be eliminated if it is determined that the hours are not appropriate to be billed and Associate will

not receive any credit for these hours. If Associate is asked to do certain work for the firm that cannot be billed to a client, then this work will be billed as administration hours or client relations hours. All administration and client relations hours must be pre-approved by a partner of LLH.

....

6. Hours Billed Discrepancy. In the event that Associate bills out less than the base quota for a three month period, the Associate's salary will be reduced appropriately at the discretion of LLH in order to make up for any discrepancy. Any discrepancy where the actual hours billed is less than the base hours required will be considered to be a debt owed by Associate to LLH at the end of the calendar year or at the termination of employment.

[¶3] Iversen asserts that Tyrone Turner, an LLH partner, told Iversen that "you can only do the work that we give you." After Iversen terminated his employment with LLH, LLH requested that Iversen refund it $35,772.63 for overpayment. LLH argues that Iversen owes this debt to LLH because he had not been credited with sufficient billable hours to justify the compensation he received under the employment agreement. Iversen refused to pay the deficiency, and LLH then sued Iversen. The district court issued a memorandum opinion granting LLH's motion for summary judgment. Before judgment was entered, Iversen filed a "motion for reconsideration" citing N.D.R.Civ.P. 59(j). The district court denied Iversen's motion.

[¶4] On appeal, Iversen argues that summary judgment was inappropriate because genuine issues of fact remain as to whether: the employment agreement was ambiguous or unconscionable, LLH waived its rights under the agreement, it was impossible for Iversen to perform the agreement, LLH failed to mitigate damages, the employment agreement lacked consideration, and the district court's pre-judgment interest award was miscalculated. On these same bases, he argues that the district court's denial of his motion to reconsider was an abuse of discretion.

2

II

[¶5]   The district court granted LLH's motion for summary judgment. This Court's standard of review over district court summary judgment orders is well established.

> Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record.

*Cuozzo v. State*, 2019 ND 95, ¶ 7, 925 N.W.2d 752 (quoting *Dahms v. Nodak Mut. Ins. Co.*, 2018 ND 263, ¶ 6, 920 N.W.2d 293) (cleaned up).

[¶6]   Iversen raised the following affirmative defenses at the district court: unconscionability, waiver or estoppel, impossibility of performance, failure to mitigate damages, and lack of consideration. We conclude, however, the court did not err in granting LLH's motion for summary judgment.

A

[¶7]   Iversen argues the employment agreement was unconscionable.

3

When this Court determines whether a contractual provision is unconscionable, we employ a two-pronged framework. The first prong pertains to procedural unconscionability, which encompasses factors relating to unfair surprise, oppression, and inequality of bargaining power…. The second prong pertains to substantive unconscionability, which focuses upon the harshness or one-sidedness of the contractual provision in question…. To prevail on an unconscionability claim, a party alleging unconscionability must demonstrate some quantum of both procedural and substantive unconscionability, and courts are to balance the various factors, viewed in totality, to determine whether the particular contractual provision is so one-sided as to be unconscionable.

*Rutherford v. BNSF Ry. Co.*, 2009 ND 88, ¶ 22, 765 N.W.2d 705 (cleaned up). "Procedural unconscionability relates to procedural deficiencies in the contract formation process, including refusal to bargain over contract terms." *Thompson v. Lithia ND Acquisition Corp. #1*, 2017 ND 136, ¶ 19, 896 N.W.2d 230 (citing *Strand v. U.S. Bank Nat'l Ass'n ND*, 2005 ND 68, ¶ 10, 693 N.W.2d 918). "When one party is in such a superior bargaining position that it totally dictates all terms of the contract and the only option presented to the other party is to take it or leave it, some quantum of procedural unconscionability is established." *Id.* at ¶ 20 (quoting *Strand*, at ¶ 15).

[¶8] "Substantive unconscionability relates to the terms of the contract and whether the terms are unreasonably favorable to the more powerful party." *Id.* at ¶ 19. Whether there is unconscionability is a question of law, but this Court reviews those trial court's factual findings necessary for unconscionability determinations under the clearly erroneous standard of review under N.D.R.Civ.P.52(a). *Terry v. Terry*, 2002 ND 2, ¶ 14, 638 N.W.2d 11 (citing *Weber v. Weber*, 1999 ND 11, ¶ 8, 589 N.W.2d 358).

[¶9] Iversen argues the employment agreement was unconscionable because LLH had sole control over his performance under the employment agreement and how many hours to credit him, and it had primary control over his work, which prevented him from being able to comply with the employment agreement. The district court assumed there was "some level of procedural

4

unconscionability" because LLH drafted the document and asked Iversen to sign it after he had already begun his employment. Regarding substantive unconscionability, there are no terms in the employment agreement that support the contention that LLH had sole control over Iversen's performance under the employment agreement. The district court concluded as follows:

> The agreement does not appear to be substantively unconscionable. The agreement provided a salary for Iversen, gave him benefits, allowed for paid time off, based his billable hours requirement on the salary he received, and was an at-will contract. Although LLH was permitted to recover the debt if Iversen did not achieve his billable hour requirement, such a clause is not so one-sided to be unconscionable. Rather, LLH was seeking to make Iversen's position profitable for the firm. Such an agreement is clearly distinguishable from an unconscionable agreement as was present in *Eberle v. Eberle*[, 2009 ND 107, 766 N.W.2d 477]. Under the employment agreement, both parties received benefits and had obligations. Having requirements for one's employees is not unconscionable.

We conclude the court did not err in concluding the employment agreement was not substantively unconscionable. *See Larson Latham Huettl LLP v. Burckhard*, 2022 ND 230, ¶ 20.

B

[¶10] Iversen argues LLH waived its contractual rights under the employment agreement or it accepted Iversen's performance in satisfaction of his contractual obligations. "Waiver is a voluntary and intentional relinquishment of a known existing advantage, right, privilege, claim, or benefit, and a waiver can be made expressly or be inferred from conduct." *Schmitz v. North Dakota State Bd. of Chiropractic Examiners*, 2022 ND 113, ¶ 16, 974 N.W.2d 666 (cleaned up). A party may waive a contractual right by acting in a manner that is "so inconsistent with an intent to enforce the right which arises upon the breach as reasonably to induce a belief that the right has been relinquished." *Beck v. Lind*, 235 N.W.2d 239, 252 (N.D. 1975). A party who delays "in enforcing his contractual rights or who accepts performance in a manner different from that required by the contract has been held" to have waived his contractual

rights. *Dangerfield v. Markel*, 252 N.W.2d 184, 191 (N.D. 1977) (citing 2 Williston on Sales, Squillante & Fonseca, § 12-8, p. 39 (4th ed. 1973)).

[¶11] First, Iversen argues LLH waived its right to receive any reimbursement because it delayed requesting repayment until after Iversen terminated his employment. He argues the employment agreement required LLH to reduce his salary every three months for any debt. We have already interpreted another employment agreement with the same language to provide "discretion to seek a recovery of the debt owed at the end of the calendar year or at the termination of employment." *Burckhard*, 2022 ND 230, ¶ 25; *see also Kessel v. Western Sav. Credit Union*, 463 N.W.2d 629, 629-31 (N.D. 1990) (credit union did not waive its rights under the contract when its actions were expressly authorized by the agreement). LLH's exercise of its discretion between two options under the employment agreement is not a waiver.

[¶12] Iversen also argues LLH waived its rights because it failed to give him any notice that he owed a deficiency. This argument fails because there is no notice requirement in the employment agreement, and the record shows that Iversen had notice of his monthly obligation through the agreement and notice of his monthly billable hours credited through monthly associate reports which informed him of his monthly deficits. The district court did not err in rejecting Iversen's waiver defense.

C

[¶13] Iversen argues that it was impossible for him to perform his contractual duties under the employment agreement because LLH failed to provide him with a sufficient number of clients. "When a contract has but a single object, and such object is … wholly impossible of performance … the entire contract is void." N.D.C.C. § 9-04-03. Impossibility of performance occurs when:

> after a contract is made, a party's performance is made impracticable *without his fault* by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

6

*Huber v. Farmers Union Serv. Ass'n of N. Dakota*, 2010 ND 151, ¶ 17, 787 N.W.2d 268. Parties to contracts may not assert impossibility if they caused the impossibility. *Id.* at ¶ 19. Nothing in the employment agreement required LLH to provide Iversen with work or clients. The district court concluded:

> There is nothing in the contract which states the partners would provide clients for Iversen. "It is the words of the contract and the manifestations of assent which govern, not the secret intentions of the parties." *Amann v. Frederick*, 257 N.W.2d 436, 439 (N.D.1977). When a contract is reduced to writing, the intent of the parties is to be ascertained from the writing alone, if possible. N.D.C.C. § 9-07-04.

The district court did not err in concluding the employment agreement imposed no obligation on LLH to provide Iversen with sufficient work or a sufficient number of clients. *See Burckhard*, 2022 ND 230, ¶¶ 16-17. The court did not err in concluding there were no genuine issues of fact regarding Iversen's impossibility defense.

D

[¶14] Iversen argues that LLH failed to mitigate damages by failing to reduce his salary every three months and at the end of each calendar year. He also argues that LLH was obligated by the employment agreement to reduce his salary if he did not satisfy the expectations associated with his base salary in the employment agreement. "The injured party has a duty to mitigate or minimize its damages and 'must protect himself if he can do so with reasonable exertion or at trifling expense, and can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided.'" *Three Aces Properties LLC v. United Rentals (N. Am.), Inc.*, 2020 ND 258, ¶ 14, 952 N.W.2d 64. As stated above, under section six of the employment agreement, LLH had discretion to reduce Iversen's salary at the end of each calendar year or at the termination of his employment. The district court explained:

> [U]nder the terms of the contract, they were permitted to wait until Iversen's termination to pursue a claim. Iversen was aware that he was consistently behind in hours. It was discretionary whether LLH docked his pay. It is not the Court's job to question

the decisions of a business. Although it may have been better for LLH to directly address the issue with Iversen, he had notice of the deficit and knew LLH had a right to seek payment for billable hours not made at termination. Iversen is a trained professional— it was not the duty of his employer to ensure that he was getting all of his work done.

There is no language in the employment agreement that imposes on LLH a duty to reduce Iversen's salary at the end of every three months or at the end of each calendar year. Therefore, the district court did not err in rejecting Iversen's argument.

E

[¶15] Iversen argues he was not bound by the employment agreement or no employment agreement ever formed because there was no consideration. Iversen's hourly billing rate in May 2019 when he signed the employment agreement was $200.00, but it rose to $225.00 per hour on January 1, 2020. He argues there was no consideration because LLH did not raise his compensation and he did not receive any other benefit after his hourly rate increased. "[C]ontinued employment for a substantial period of time is sufficient consideration to support an employment agreement." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004). The parties signed the employment agreement on May 21, 2019, and Iversen continued to work for LLH until July 2021. This continued employment is sufficient consideration for the employment agreement. The district court did not err in concluding there were no issues of material fact regarding consideration. *See Burckhard*, 2022 ND 230, ¶¶ 22-23.

III

[¶16] North Dakota law does not formally recognize motions to reconsider, but if properly written and argued, a motion to reconsider may be treated as a motion to alter or amend a judgment under N.D.R.Civ.P. 59(j), or as a motion for relief from judgment under N.D.R.Civ.P. 60(b). *Richardson v. Richardson*, 2022 ND 185, ¶ 3, 981 N.W.2d 907. "A motion to alter or amend a judgment must be served and filed no later than 28 days after notice of entry of the

judgment." N.D.R.Civ.P. 59(j). A Rule 59(j) motion is not a second opportunity for a trial court to reconsider presented evidence, but rather is a "means to correct errors of law." *Fonder v. Fonder*, 2012 ND 228, ¶ 10, 823 N.W.2d 504 (citing *Hanson v. Hanson*, 2003 ND 20, ¶ 5, 656 N.W.2d 656). We will not reverse a district court's decision on a motion to alter or amend judgment under N.D.R.Civ.P. 59(j) unless the court abused its discretion. *James Vault & Precast Co. v. B&B Hot Oil Serv., Inc.*, 2019 ND 143, ¶ 17, 927 N.W.2d 452. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misapplies or misinterprets the law, or when the decision is not the product of a rational mental process leading to a reasoned decision." *Id.*

[¶17] Iversen argues that because several issues of fact remained, the district court abused its discretion in denying his motion to reconsider. Iversen argued, and the district court considered, his motion under Rule 59(j). The district court cited and applied our cases holding that a motion for reconsideration should not be used as a means for the court to reexamine issues or reconsider evidence, but rather to correct misapplication of law. *See Flaten v. Couture*, 2018 ND 136, ¶ 28, 912 N.W.2d 330. After explaining that many of Iversen's contentions were not proper under Rule 59(j), the district court conducted a reasoned analysis of Iversen's legal and factual arguments and concluded they did not undermine the court's decision to grant summary judgment to LLH. The district court did not abuse its discretion in denying Iversen's motion.

IV

[¶18] Iversen raised several arguments for the first time either in his appellant's brief or in his brief in support of his motion for reconsideration. These arguments include whether the employment agreement was ambiguous regarding whether LLH or Iversen was responsible for providing billable work, whether LLH waived its right to repayment for Iversen's discrepancy in hours when LLH paid Iversen end-of-year bonuses, whether Tyrone Turner's alleged out-of-court statement was not hearsay because it was an opposing party statement under N.D.R.Ev. 801(d)(2), and whether LLH miscalculated its prejudgment interest. He neglected to raise these issues in his response to

LLH's motion for summary judgment. These issues were not properly presented to the district court, and therefore we decline to consider them on appeal.

V

[¶19] The district court properly granted summary judgment and denied Iversen's motion for reconsideration. We affirm the judgment and the order denying Iversen's motion for reconsideration.

[¶20] Jon J. Jensen, C.J.
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte
     Douglas A. Bahr