2010 ND 220

**MARKWED EXCAVATING, INC.,**
**Plaintiff and Appellant**

v.

**CITY OF MANDAN and Swenson,**
**Hagen, & Co., Defendants**
**and Appellees.**

**No. 20100076.**

Supreme Court of North Dakota.

Nov. 15, 2010.

Clark Jay Bormann (argued) and Sophie Young Morgan (appearance), Bismarck, N.D., for plaintiff and appellant.

Randall Joseph Bakke (argued) and David Ray Phillips (on brief), Bismarck, N.D., for defendant and appellee City of Mandan.

Lyle W. Kirmis, Bismarck, N.D., for defendant and appellee Swenson, Hagen, & Co.

CROTHERS, Justice.

[¶ 1] Markwed Excavating, Inc., appeals from orders granting summary judgment dismissal of its action against the City of Mandan and against Swenson, Ha-

gen & Company for breach of contract and for negligence. We hold the plain and unambiguous language of the construction contract between Mandan and Markwed precludes Markwed from recovering damages for delays allegedly caused by Mandan or Swenson. We affirm the summary judgments.

I

[¶ 2] After competitive bidding, Mandan and Markwed entered into an August 16, 2006 contract for a storm sewer improvement project requiring Markwed to bury more than 1,300 feet of 36 inch pipe from the Missouri River to a development west of Raging Rivers Water Park in Mandan. The project also required Markwed to tunnel underneath three Mandan roads, 46th Avenue Southeast, Bismarck Expressway and Marina Road. Mandan employed Swenson as the engineer and manager for the project, and Swenson prepared a written "specification and proposal" for the project.

[¶ 3] The August 16, 2006 contract between Mandan and Markwed identified twelve component parts of the "contract documents" in the following order: the advertisement for bids; the information for bidders; a copy of the accepted proposal; a guaranty and required insurance certificate; the contract; a performance bond; a payment bond; general conditions; Mandan's construction specifications and the specification and proposal prepared by Swenson; the contractor's income, sales and use tax clearance certificate; a certificate of premium payment from workforce safety and insurance; and the contractor's license. The August 16, 2006 contract stated it and the component parts formed the contract between Mandan and Markwed and if "any provision in any of the component parts of the Contract conflicts with any provision of any other com-

ponent part, the provision in the component part first enumerated herein shall govern, except as otherwise specifically stated."

[¶ 4] The August 16, 2006 contract required Markwed to complete work on the project by May 1, 2007 and included language about delays and extensions of time:

"Extension of time may be granted if the Contractor be delayed at any time in the progress of the work by any act or neglect of the Owner or his employees, or by any other Contractor employed by the Owner, or by changes ordered in the work, or by strikes, lockouts, fires, unusual delay in transportation, unavoidable casualties or any causes beyond the control of the Contractor, or by delay authorized by the Engineer, or by which the Engineer shall determine to justify the delay. Any such extension of time shall be extended for such reasonable time as the Engineer may determine, or as agreed upon by the Owner."

The contract incorporated Mandan's construction specifications, including language about delays and extensions of time in a "no damages for delay" clause:

*"Delays.* The Contractor will not be entitled to any compensation for causes resulting in delays or hindrances to the work. Extensions of time will be granted for unavoidable delays, which in the opinion of the Engineer are clearly beyond the control of the contractor, resulting from causes such as Acts of Providence, fortuitous events and the like. The Engineer must receive written notice of claim for such delays from the Contractor before any extensions of time will be granted. Any extension of time will not relieve the Contractor or his sureties from their obligations which shall remain in full force and effect until the satisfactory discharge of the contract. The contractor will indemnify

and hold harmless the owner and the engineer and their agents and employees from and against all claims, damages, losses and expenses including attorney's fees arising out of or resulting from the performance of the work, provided that any such claims, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom; and is cause in whole or in part by any negligent or willful act or omission of the contractor and subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts, any of them may be liable."

[¶ 5] The project plans required the pipeline west of Bismarck Expressway and east of 46th Avenue Southeast to be buried within an existing 75–foot permanent drainage easement. Markwed claims a provision of the contract specifications and proposal prepared by Swenson authorized Markwed "to access across private property and to store materials on private property" owned by Steven McCormick and located north of the 75–foot drainage easement. Markwed claims that provision granted it a staging area for the project and during the bidding process, Swenson's representatives orally told Markwed the land north of the drainage easement was available for a staging area for the project. Markwed claims Swenson and Mandan, acting through Swenson, were responsible for obtaining any required temporary construction easements for that staging area. Markwed also claims the holder of an option to purchase McCormick's land north of the drainage easement advised Markwed in September 2006, that it could not use the land as a staging area for the project. The project was delayed for several weeks before Swenson obtained written temporary construction easements from McCormick. Markwed claims it could not work on the project because of the delay, it was unable to perform any significant work on the project in 2006, and it was forced to complete work the following year after Mandan granted Markwed an extension of time until December 31, 2007, to complete the project.

[¶ 6] Markwed sued Mandan and Swenson, alleging Mandan and Swenson breached the contract by failing to obtain timely easements for Markwed to access land for a staging area, which precluded Markwed from finishing the contract in a timely manner and resulted in more than $400,000 in damages to Markwed. Markwed also alleged Mandan and Swenson negligently engaged in conduct that caused the delay and proximately caused damage to Markwed. Markwed subsequently moved to amend its complaint to include a claim for negligent misrepresentation.

[¶ 7] The district court granted summary judgment for Mandan and for Swenson, concluding the no damages for delay clause was unambiguous, was not unconscionable and precluded Markwed from recovering damages for work delays not contemplated by the parties. The court discussed three approaches for construing the clause, a New York approach, a literal approach, and a Maryland approach; the court concluded North Dakota law more closely resembled Maryland's law. The court decided the unambiguous language of the contract did not authorize an exception for delays not contemplated by the parties and the contract precluded Markwed from recovering damages for delays unless Markwed could establish a claim for negligent misrepresentation. The court decided Markwed could not bring a tort claim against Mandan because any duty Mandan owed to Markwed was based on the contract. The court also decided Markwed's tort claim against

Swenson was barred by the economic loss doctrine. After further briefing, the court decided Markwed could not recover on a claim against Mandan and Swenson for alleged negligent misrepresentations in the contract under North Dakota Pattern Jury Instruction, NDJI–Civil 50.32, because Markwed could not establish the requisite elements for that claim against Mandan. The court determined Swenson was an independent contractor and not a party to the contract between Mandan and Markwed and Markwed thus could not establish the elements of a misrepresentation claim against Swenson. The court denied Markwed's motion to amend its complaint to include a claim for negligent misrepresentation.

## II

[¶ 8] Markwed's March 4, 2010 notice of appeal states Markwed "appeals ... from the ORDER ON MOTIONS FOR SUMMARY JUDGMENT" dismissing Markwed's complaint against Mandan and against Swenson.

■■■ [¶ 9] "An order granting summary judgment is not appealable." *Farmers Union Oil Co. v. Smetana*, 2009 ND 74, ¶ 7, 764 N.W.2d 665. "An attempted appeal from [an] order granting summary judgment will, however, be treated as an appeal from a subsequently entered consistent judgment, if one exists." *Id.* at ¶ 7. Judgments consistent with the order dismissing Markwed's complaint against Mandan and against Swenson were entered in January 2010. Although Mandan argues Markwed did not appeal from the order denying its motion to amend the complaint, that order was incorporated into the subsequent consistent judgments dismissing the actions, and we treat Markwed's appeal as an appeal from those judgments. Markwed's appeal is timely under N.D.R.App.P. 4(a), and the issues raised by Markwed in its appeal are reviewable in its timely appeal from the judgments. *See Staiger v. Gaarder*, 258 N.W.2d 641, 644 (N.D.1977) (issues raised in interlocutory order are properly reviewable in timely appeal from final judgment).

## III

■■ [¶ 10] We review Markwed's appeal under our well-established standards for summary judgment, which:

> " 'is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.' "

*Lucas v. Riverside Park Condos. Unit Owners Ass'n*, 2009 ND 217, ¶ 16, 776 N.W.2d 801 (quoting *Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 5, 766 N.W.2d 458). Summary judgment is appropriate if the "law is such that resolution of factual disputes will not alter the result." *Ernst*

*v. Burdick,* 2004 ND 181, ¶ 4, 687 N.W.2d 473.

## IV

### A

[¶ 11] Markwed argues the district court erred in deciding the no damages for delay clause was binding on Markwed because the contract components are ambiguous and repugnant. Markwed contends the district court erred in ruling uncontemplated delays are not an exception to the no damages for delay clause. Markwed asserts the contract is ambiguous regarding delays contemplated by the clause and its application to conduct by Mandan or Swenson. Markwed argues if the clause is not ambiguous, it must be construed to exclude Mandan's actions as a fortuitous event to eliminate repugnancy with other contract provisions, including a "time is of the essence" provision.

[¶ 12] A no damages for delay clause exculpates an owner from liability for damages resulting from delays in the performance of the contractor's work by ordinarily limiting a contractor's remedy to an extension of time and is generally enforceable if the requirements for a valid contract are satisfied. *See* 13 Am.Jur.2d *Building and Construction Contracts* §§ 58–59 (2009); Maurice Brunner, Annotation *Validity and Construction of "No Damage" Clause with Respect to Delay in Building or Construction Contract,* 74 A.L.R.3d 187, § 3 (1976); 7 Richard A. Lord, *Williston on Contracts* § 1512 (4th ed.2010).

[¶ 13] Some courts, however, have recognized an exception for delays not contemplated by the parties and have held that a no damages for delay clause does not preclude a contractor's action against an owner for damages caused by uncontemplated delays. *McGuire & Hester v. San Francisco,* 113 Cal.App.2d 186, 247 P.2d 934, 936–38 (1952); *Corinno Civetta*

*Constr. Corp. v. New York,* 67 N.Y.2d 297, 502 N.Y.S.2d 681, 493 N.E.2d 905, 910 (1986); *Seattle v. Dyad Constr., Inc.,* 17 Wash.App. 501, 565 P.2d 423, 432–33 (1977). *See State Highway Admin. v. Greiner Eng'g Sciences, Inc.,* 83 Md.App. 621, 577 A.2d 363, 366–72 (1990) (explaining various approaches and citing cases recognizing exception for uncontemplated delays). In *Corinno Civetta,* the New York Court of Appeals explained an exception for uncontemplated delays under New York law was based on the concept of mutual assent:

> "It has been settled for some time that exculpatory clauses will not bar claims resulting from delays caused by the contractee if the delays or their causes were not within the contemplation of the parties at the time they entered into the contract. The exception is based on the concept of mutual assent. Having agreed to the exculpatory clause when he entered into the contract, it is presumed that the contractor intended to be bound by its terms. It can hardly be presumed, however, that the contractor bargained away his right to bring a claim for damages resulting from delays which the parties did not contemplate at the time. Thus, even broadly worded exculpatory clauses, such as the one at issue in these actions, are generally held to encompass only those delays which are reasonably foreseeable, arise from the contractor's work during performance, or which are mentioned in the contract."

502 N.Y.S.2d 681, 493 N.E.2d at 910 (citations omitted).

[¶ 14] Other courts have held that uncontemplated delays are not an exception to the general rule that no damages for delay clauses are enforceable. *M.A. Lombard & Son Co. v. Public Bldg. Comm'n,* 101 Ill.App.3d 514, 57 Ill.Dec. 209, 428

N.E.2d 889, 892–93 (1981); *Houston v. R.F. Ball Constr. Co., Inc.,* 570 S.W.2d 75, 78 (Tex.Civ.App.1978); *Western Engineers, Inc. v. State Road Comm'n,* 20 Utah 2d 294, 437 P.2d 216, 218 (1968); *John E. Gregory & Son, Inc. v. A. Guenther & Sons Co.,* 147 Wis.2d 298, 432 N.W.2d 584, 587 (1988). In *Gregory,* the Wisconsin Supreme Court explained the rationale for not allowing an exception for uncontemplated delays under Wisconsin law:

> "delay 'not contemplated by the parties' is not an exception to the general rule that 'no damage for delay' clauses are enforceable. We conclude that parties can mutually assent to such a clause without contemplating in particularity all of the potential causes of delay. Indeed, the adoption of a 'no damage for delay' clause shows that the parties realize that some delays cannot be contemplated at the time of the drafting of the contract. The parties include the clause in the contract in order to resolve problems conclusively should such delays occur. The parties can deal with delays they contemplate by adjusting the start and completion dates or by including particular provisions in the contract. '[I]t is the unforeseen events which occasion the broad language of the clause since foreseeable ones could be readily provided for by specific language.' Thus, the doctrine of mutual assent supports our conclusion that delays not contemplated by the parties should not be an exception to the rule that 'no damage for delay' clauses should be enforced."

> "This result is neither unfair nor inequitable. Knowing that unforeseen delays—such as the ones in this case—can occur, parties can bargain accordingly. A subcontractor can protect itself from the risk of unforeseen delay simply by adjusting its bid price in recognition of the potential additional costs or by refusing to accept such a provision in the contract."

432 N.W.2d at 587 (citations and footnote omitted).

[¶ 15] A common thread in cases involving a no damages for delay clause involves interpretation of the parties' mutual intent in the context of the requirements for a valid contract. *See Corinno Civetta,* 502 N.Y.S.2d 681, 493 N.E.2d at 909–10; *Houston,* 570 S.W.2d at 78; *Greiner,* 577 A.2d at 371–72. In *Greiner,* the Maryland Court of Appeals described Maryland's objective view of contract interpretation to ascertain the parties' intent and said the plain and unambiguous language of a no damages for delay clause reflected the parties' intent to preclude recovery for a contractor's damages for delay. 577 A.2d at 371–72. The court recognized that for public contracts, a no damages for delay clause protects public entities with fixed appropriations from litigation based on claims the public entity has been responsible for unreasonable delays. *Id.* at 371. Although the *Greiner* court decided the no damages for delay clause in that case unambiguously precluded recovery for delay damages and no exception for uncontemplated delays existed under Maryland law, the court also explained the "better reasoned approach does not enforce the exculpatory clause where there is 'intentional wrongdoing or gross negligence,' [or] 'fraud or misrepresentation,' on the part of the agency asserting the clause." *Id.* at 372 (citations omitted).

[¶ 16] We consider the language in this contract under North Dakota contract law. Our law recognizes a major public policy of "[f]reedom to contract on terms not specifically prohibited by statute." *Toni v. Toni,* 2001 ND 193, ¶ 18, 636 N.W.2d 396. In *City of Bismarck v. Mariner Constr., Inc.,* we outlined rules for interpreting the parties' mutual intention for a contract in

the context of a competitive bid involving a public entity and a private contractor:

"The object of interpreting and construing a contract is to ascertain and give effect to the parties' mutual intention at the time of contracting. N.D.C.C. § 9–07–03; *Fargo Foods, Inc. v. Bernabucci,* 1999 ND 120, ¶ 13, 596 N.W.2d 38. The interpretation of a written contract to determine its legal effect is a question of law. *Bernabucci,* at ¶ 13. Except as otherwise provided by law, public and private contracts are interpreted by the same rules of interpretation. N.D.C.C. § 9–07–01. The parties' intention must be ascertained from the writing alone, if possible. N.D.C.C. § 9–07–04; *Bernabucci,* at ¶ 13. A contract must be construed as a whole to give effect to each provision, if reasonably possible. N.D.C.C. § 9–07–06; *Bernabucci,* at ¶ 13. A contract must be interpreted to make it lawful, operative, definite, reasonable, and capable of being carried into effect. N.D.C.C. § 9–07–08. Words in a contract must be construed in their ordinary and popular sense. N.D.C.C. § 9–07–09; *Bernabucci,* at ¶ 13. If a contract is uncertain, the language of the contract should be interpreted most strongly against the party who caused the uncertainty to exist; however, for contracts between a public entity and a private party, it is presumed that all uncertainty was caused by the private party. N.D.C.C. § 9–07–19. *See Kaler v. Kraemer,* 1999 ND 237, ¶ 19, 603 N.W.2d 698. Under N.D.C.C. § 9–08–02.1, any provisions in a construction contract which would make the contractor liable for the owner's errors or omissions in the plans and specifications of the contract are against public policy and void."

"If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language. *Lire, Inc. v. Bob's Pizza Inn Rests., Inc.,* 541 N.W.2d 432, 434 (N.D.1995). If a written contract is ambiguous, however, extrinsic evidence may be considered to show the parties' intent. *Id.* Whether or not a contract is ambiguous is a question of law. *Id.* An ambiguity exists when rational arguments can be made in support of contrary provisions as to the meaning of the language in question. *Id.*"

2006 ND 108, ¶¶ 11–12, 714 N.W.2d 484.

[¶ 17] We have also said, "[E]xculpatory clauses are strictly construed against the benefitted party, and will not be enforced if they are ambiguous, or release the benefitted party from liability for intentional, willful, or wanton acts," but "parties are bound by clear and unambiguous language evidencing an intent to extinguish liability." *Reed v. University of North Dakota,* 1999 ND 25, ¶ 22, 589 N.W.2d 880. *See* N.D.C.C. § 9–08–02.

[¶ 18] The August 16, 2006 contract between Mandan and Markwed states:

"Extension of time may be granted if the Contractor be delayed at any time in the progress of the work by any act or neglect of the Owner or his employees, or by any other Contractor employed by the Owner, or by changes ordered in the work, or by strikes, lockouts, fires, unusual delay in transportation, unavoidable casualties or any causes beyond the control of the Contractor, or by delay authorized by the Engineer, or by which the Engineer shall determine to justify the delay."

Mandan's construction specifications were also part of the contract and state, "[T]he Contractor will not be entitled to any compensation for causes resulting in delays or hindrances to the work" and "[e]xtensions of time will be granted for unavoidable

delays, which in the opinion of the Engineer are clearly beyond the control of the contractor, resulting from causes such as Acts of Providence, fortuitous events and the like."

[¶ 19] Although there are some differences between those provisions and the provisions in other reported cases, the provisions in this case are broad and unambiguous. The plain language of those provisions does not address either contemplated or uncontemplated delays. Rather, the plain language of those provisions applies to "causes resulting in delays or hindrances to the work" and authorizes extensions of time for "unavoidable delays" or delays by "any act or neglect of the Owner or his employees, or by any other Contractor employed by the Owner." That language unambiguously embraces work delays by "any act or neglect" of Mandan or any other contractor employed by Mandan, including Swenson. That broad language includes foreseen and unforeseen delays. Construing the no damages for delay clause to exclude uncontemplated causes of delay would preclude application of the clause for most delays and render the clause meaningless. If the parties had contemplated a cause for a delay, they could have specifically included language for that cause in the contract. We decline Markwed's invitation to engraft an exception for uncontemplated delays into the plain and broad language of this no damages for delay clause. *Cf.* Cal. Pub. Cont. Code § 7102 (2004) (provision in public construction contract limiting contractee's liability for unreasonable and uncontemplated delay to extension of time shall not be construed to preclude contractor from recovering damages for delay). Rather, our statutes reflect a preference for construing contracts with public entities in favor of the public entity. *See* N.D.C.C. § 9-07-19. The inclusion of the no damages for delay clause in the contract reflects that some delays could not be contemplated when the parties contracted and that the clause resolves disputes conclusively "for causes resulting in delays or hindrances to the work." Although the contract includes a provision stating that time is of the essence, that provision does not override the specific provision precluding compensation "for causes resulting in delays or hindrances to the work." Allowing extensions of time is not repugnant to a provision stating time is of the essence because extensions would be unnecessary without a provision stating time is of the essence. Moreover, the language for extensions of time for "unavoidable delays . . . resulting from causes such as Acts of Providence, fortuitous events and the like" does not create an ambiguity because that language applies to reasons for extensions of time and not to causes for delay.

[¶ 20] When the provisions of this contract are considered together, as they must be under North Dakota contract law, the plain and unambiguous language of the contract does not include an exception for uncontemplated delays and includes delays allegedly caused by an act or neglect by Mandan or Swenson. We conclude the no damages for delay clause is not repugnant to other provisions of the contract and, when harmonized with other provisions of the contract as required by North Dakota law, is not ambiguous and does not include an exception for uncontemplated delays.

## B

[¶ 21] Markwed also argues the no damages for delay clause is unconscionable because the clause is so one-sided that it would be unjust and unfair to enforce it.

[¶ 22] "Unconscionability is a doctrine which allows courts to deny enforcement of a contract because of procedural abuses arising out of the contract's

formation and substantive abuses relating to the terms of the contract." *Strand v. U.S. Bank Nat'l Ass'n*, 2005 ND 68, ¶ 4, 693 N.W.2d 918. We have said, "An agreement is unconscionable if it is one no rational, undeluded person would make, and no honest and fair person would accept, or is blatantly one-sided and rankly unfair." *Eberle v. Eberle*, 2009 ND 107, ¶ 18, 766 N.W.2d 477 (citations omitted). In assessing whether a contractual provision is unconscionable, courts " 'look at the contract from the perspective of the time it was entered into, without the benefit of hindsight,' " and determine " 'whether, under the circumstances presented in the particular commercial setting, the terms of the agreement are so one-sided as to be unconscionable. The principle underlying . . . unconscionability provisions is the prevention of oppression and unfair surprise.' " *Strand*, at ¶ 4 (quoting *Construction Assocs., Inc. v. Fargo Water Equip. Co.*, 446 N.W.2d 237, 241 (N.D.1989)). The determination whether a contractual provision is unconscionable is a question of law, but depends upon the factual circumstances of the case. *Rutherford v. BNSF Ry. Co.*, 2009 ND 88, ¶ 21, 765 N.W.2d 705. "Because the determination of unconscionability is fact specific, courts must 'consider such claims on a case-by-case basis' and assess the totality of the circumstances." *Strand*, at ¶ 5 (citations omitted).

[¶ 23] A two-prong framework is used to determine whether a contractual provision is unconscionable. *Rutherford*, 2009 ND 88, ¶ 22, 765 N.W.2d 705. The first prong involves procedural unconscionability " 'which encompass factors relating to unfair surprise, oppression, and inequality of bargaining power.' " *Strand*, 2005 ND 68, ¶ 7, 693 N.W.2d 918 (quoting *Construction Assocs.*, 446 N.W.2d at 241). The second prong involves substantive unconscionability " 'which focuses upon the harshness or one-sidedness of the contractual provision in question.' " *Strand*, at ¶ 7 (quoting *Construction Assocs.*, at 241). To prevail on a unconscionability claim, "a party alleging unconscionability must demonstrate some quantum of both procedural and substantive unconscionability, and courts are to balance the various factors, viewed in totality, to determine whether the particular contractual provision is 'so one-sided as to be unconscionable.' " *Strand*, at ¶ 12 (quoting *Construction Assocs.*, at 241).

[¶ 24] This contract was the result of Markwed's successful competitive bid for a public works contract. The clause serves an important function of protecting public entities contracting for public improvements on the basis of fixed appropriations. *See Greiner*, 577 A.2d at 371–72. Markwed is a sophisticated contractor and could have protected itself against delays through a bid adjustment for the work. The circumstances of this competitive bid for a public improvement reflect the parties' bargaining power does not overwhelmingly favor either party and no basis exists for concluding there is any element of procedural or substantive unconscionability in this case. We reject Markwed's argument that the no damages for delay clause is unconscionable, and we conclude Markwed is bound by the plain and unambiguous language of the clause.

C

[¶ 25] Markwed argues negligent misrepresentations by Mandan and Swenson during the bidding process prohibit enforcement of the no damages for delay clause. Markwed argues that it should have been permitted to amend its complaint to allege Mandan and Swenson negligently misrepresented that Markwed could use land identified in the contract components for equipment and material

storage and that their negligence in failing to procure appropriate easements caused an unreasonable delay in the construction process. This issue was postured in the context of North Dakota Pattern Jury Instruction, NDJI–Civil 50.32, which provides:

"A party to a contract may not induce another to enter into a contract by making a positive assertion, in a manner not warranted by the information of the person making it, of that which is not true although the person believes it to be true. Lack of intent to deceive does not protect one who makes a false statement without a sufficient factual basis for that statement."

[¶ 26] We have noted, "The North Dakota Pattern Jury Instructions are published as a guide by the State Bar Association, in conjunction with the North Dakota Pattern Jury Instruction Commission. The pattern jury instructions are not controlling law, and are published with the caution that they are 'neither a restatement nor an encyclopedia of the prevailing law.'" *State v. Bauer*, 2010 ND 109, ¶ 14, 783 N.W.2d 21 (citations omitted). North Dakota Pattern Jury Instruction, NDJI–Civil 50.32 is based on *Bourgois v. Montana–Dakota Utils. Co.*, 466 N.W.2d 813 (N.D.1991). No party to this appeal has requested that we review our holding in *Bourgois,* which therefore is the law of this case. *Erickson v. Brown*, 2008 ND 57, ¶ 27, 747 N.W.2d 34 ("Our caselaw has consistently recognized '[t]he "law of the case" doctrine and the scope of the parties' appeal define the parameters of our review.'") (citations omitted).

[¶ 27] Here, the plain language of the August 16, 2006 contract provides for an extension of time if Markwed is "delayed at any time in the progress of the work by any act or neglect of [Mandan] or his employees, or by any other Contractor employed by [Mandan]." Although Swenson was an independent contractor, that plain language, when read in conjunction with the no damages for delay clause, evidences the contracting parties' intent to limit Markwed's remedies to an extension of time for delays caused by any act or neglect by Mandan, or its employees or any other contractor employed by Mandan. That language controls the parties' contractual relationship and grants a third-party benefit to Mandan's other contractors, including Swenson, for delays caused by their neglect. Under N.D.C.C. § 9–02–04, Swenson is entitled to enforce that provision for delays caused by its neglect. That language, when read in conjunction with the no damages for delay clause, limits Markwed's remedies against Mandan and Swenson for delays resulting from their neglect. Markwed's claims for damages for delay against Mandan and Swenson are based on negligence, and Markwed's complaint does not raise a claim against those entities for intentional or willful injury. *See* N.D.C.C. § 9–08–02; *Reed,* 1999 ND 25, ¶ 22 n. 4, 589 N.W.2d 880. We conclude the alleged negligent misrepresentations by Mandan and Swenson, if any, do not prohibit enforcement of the plain and unambiguous language of the no damages for delay clause. Markwed sought to amend his complaint to include a claim for negligent misrepresentation, and we conclude the district court did not abuse its discretion in refusing to allow Markwed to amend its complaint because recovery under the requested amendment would be futile. *See Darby v. Swenson, Inc.,* 2009 ND 103, ¶ 12, 767 N.W.2d 147 ("district court does not abuse its discretion in denying a motion to amend its complaint when such an amendment would be a futile act").

V

[¶ 28] Because of our resolution of the foregoing issues, it is not necessary to

consider whether the economic loss doctrine bars a tort claim against Swenson.

## VI

[¶ 29] We affirm the summary judgments.

[¶ 30] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., ALLAN L. SCHMALENBERGER, S.J.

[¶ 31] The Honorable ALLAN L. SCHMALENBERGER, S.J., sitting in place of SANDSTROM, J., disqualified.