# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 202

Wachter Development, Inc.,                                    Plaintiff and Appellee

v.

Kevin and Andrea Martin,                                    Defendants and Appellants

No. 20180379

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Cynthia Feland, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Randall J. Bakke (argued) and Grant T. Bakke (appeared), Bismarck, ND, for plaintiff and appellee.

Robert W. Martin, Minot, ND, for defendants and appellants.

**McEvers, Justice.**

[¶1]     Andrea and Kevin Martin appeal a district court judgment ordering the removal of a fence on their property after finding the fence violated restrictive covenants recorded against the property.  The Martins argue the restrictive covenants do not apply to their property because they agreed to purchase the property before the covenants went into effect.   They also claim the restrictive covenants are unconscionable.  We affirm.


I

[¶2]     Wachter Development has an interest in the Promontory Point V development in Bismarck.  In April 2012, Wachter entered into a purchase contract with K&L Homes for 30 lots in the development.  In July 2012, the Martins entered into a contract with K&L for a lot in the development.

[¶3]     In April 2013, Wachter recorded a Declaration of Restrictions and Obligations (DRO) against the development property.  One of the building restrictions prohibited fences on the property.  In August 2013, Wachter conveyed title to the property to K&L.  In the fall of 2013, the Martins were informed of the prohibition on fences during the construction of their home.  In December 2013, the Martins requested a variance from the fence restriction, but Wachter's Architectural Review Committee denied the request.  In March 2014, K&L conveyed the lot title to the Martins.

[¶4]     In July 2016, the Martins installed a "dog run" in their yard, an enclosed area built with fencing material.  Wachter requested the removal of the dog run, but the Martins refused, claiming the DRO did not apply to their property because they agreed to purchase their lot before the DRO was recorded against the property.

[¶5]     In February 2017, Wachter sued the Martins, requesting the district court order removal of the fence.  The Martins counterclaimed, alleging the DRO does not apply

to their property because they were equitable owners of their lot before the DRO was recorded. They also alleged Wachter waived its right to enforce the DRO, and the DRO was unconscionable.

[¶6] Before trial, the district court granted summary judgment to Wachter on two issues: 1) the court concluded the DRO applied to the Martins' property; and 2) the court concluded the Martins' dog run constituted a fence prohibited under the DRO.

[¶7] At trial, the parties presented evidence relating to the Martins' counterclaim: whether Wachter was precluded from enforcing the DRO on the basis of waiver or unconscionability. In its order following trial, the district court ruled the DRO was not unconscionable and Wachter did not waive its ability to enforce the DRO. The court entered a judgment ordering removal of the fence from the Martins' property.

II

[¶8] This Court's standard of review for summary judgments is well established:

> Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record.

2

*Frontier Fiscal Servs., LLC v. Pinky's Aggregates, Inc.*, 2019 ND 147, ¶ 6, 928 N.W.2d 449 (quoting *Becker v. Burleigh Cty.*, 2019 ND 68, ¶ 7, 924 N.W.2d 393).

[¶9] In *KLE Constr., LLC v. Twalker Dev., LLC*, 2016 ND 229, ¶ 5, 887 N.W.2d 536 (quoting *Border Res., LLC v. Irish Oil & Gas, Inc.*, 2015 ND 238, ¶ 14, 869 N.W.2d 758), we explained the standard of review for an appeal from a bench trial:

> [T]he trial court's findings of fact are reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a) and its conclusions of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. In a bench trial, the trial court is the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations.

## III

[¶10] This Court has said "planned unit developments present a modern trend in residential living, and [d]eed restrictions and covenants are vital to the existence and viability of such communities, and if clearly established by proper instruments, are favored by definite public policy." *Wheeler v. Southport Seven Planned Unit Dev.*, 2012 ND 201, ¶ 10, 821 N.W.2d 746 (internal quotations omitted). A servitude, such as a restrictive covenant, is created if the owner of the property to be burdened conveys a lot in a general-plan development subject to a recorded declaration of servitudes for the development. *Id.*

[¶11] Covenants running with the land are defined in N.D.C.C. § 47-04-24:

> Certain covenants contained in grants of estates in real property are appurtenant to such estates and pass with them so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee in the same manner as if they personally had entered into them. Such covenants are said to run with the land.

In regard to restrictive covenants, a landowner may sell land subject to restrictive covenants so long as they are not contrary to public policy. *Wheeler*, 2012 ND 201, ¶ 13, 821 N.W.2d 746.

[¶12] The interpretation of restrictive covenants is governed by the rules for contract interpretation. *Hill v. Lindner*, 2009 ND 132, ¶ 8, 769 N.W.2d 427. "A restrictive covenant must be construed as a whole to ascertain the parties' intent in light of the surrounding circumstances and words must be given their plain and ordinary meaning." *Id.* (citing N.D.C.C. §§ 9-07-02; 9-07-04; 9-07-06; 9-07-09; and 9-07-12).

IV

[¶13] The Martins claim the DRO's building restrictions do not apply to their property because they contracted with K&L to purchase their lot before the DRO was recorded. Their argument is based on the doctrine of equitable conversion. They claim they were equitable owners of the property when they entered into the lot contract with K&L.

[¶14] This Court has discussed the doctrine of equitable conversion:

> Under the doctrine of equitable conversion, "once parties have executed a binding contract for the sale of land, equitable title vests in the purchaser and the vendor holds legal title only as security for payment of the balance of the purchase price." Black's Law Dictionary 538 (6th ed. 1990). Equity regards the realty as "converted" into personalty, and the purchase money as "converted" into realty. *Clapp v. Tower*, 11 N.D. 556, 93 N.W. 862, 863 (1903); 27 Am. Jur. 2d *Equitable Conversion* § 1 (1966). The doctrine evolved from the equitable maxim: "that is regarded as done which should be done." *Clapp v. Tower, supra*, 93 N.W. at 863. The doctrine applies, however, only where there is a valid contract for sale which could be specifically enforced. *Henry S. Grinde Corp. v. Klindworth*, 77 N.D. 597, 44 N.W.2d 417, 425 (1950); *Clapp v. Tower, supra*, 93 N.W. at 864; 27 Am. Jur. 2d *Equitable Conversion* § 8 (1966).

*United Bank of Bismarck v. Trout*, 480 N.W.2d 742, 748 (N.D. 1992). "The doctrine of equitable conversion does not apply where it interferes with other equitable considerations or violates the intentions of the parties of the sales contract." 27A Am. Jur. 2d *Equitable Conversion* § 4 (2019).

[¶15] In April 2012, Wachter and K&L executed a Real Estate Sales Purchase Contract for the purchase of 30 lots in Promontory Point V. The contract provided that at closing Wachter would deliver a warranty deed conveying title to the real

4

property "free and clear of all encumbrances except . . . covenants, conditions and restrictions of record."

[¶16] In July 2012, the Martins entered into a lot sale and earnest money contract with K&L for a lot in the development. The parties agreed that at closing the Martins would pay the balance of the purchase price, and K&L would deliver possession of the lot and a warranty deed.

[¶17] On April 8, 2013, Wachter recorded the DRO against the development property. The DRO states "all of . . . the said conditions and restrictions shall inure to the benefit of, be binding upon and pass with said Real Property, and each and every lot and/or parcel thereof, and shall inure to the benefit of, apply to, and bind the respective successors in title or interest of Developer." The DRO contains numerous building restrictions that apply to the development. The building restriction at issue in this case provides "No fences shall be constructed."

[¶18] On August 1, 2013, Wachter delivered a warranty deed to K&L for the lots. The warranty deed states, "[s]ubject to easements, rights-of-way, restrictive covenants, and mineral conveyances and reservations of record." In March 2014, K&L delivered a warranty deed to the Martins. The warranty deed states the property is "free from all encumbrances; except . . . easements, rights-of-way, [and] restrictive covenants . . . of record."

[¶19] The district court considered the Martins' equitable conversion argument and concluded it did not apply:

> The doctrine of equitable conversion has no application in this case. K&L could not have conveyed to [the] Martins any interest greater than possessed by K&L. *See Green v. Gustafson*, 482 N.W.2d 842, 849 (N.D. 1992) ("It is axiomatic that a deed cannot convey a greater interest or estate in the property than the grantor has."). It is not disputed that when K&L entered into the Lot Contract with [the] Martins on July 11, 2012, Wachter was the undisputed title owner of record of the subject lot at the County Recorder's office. At the very least, [the] Martins were on constructive notice of this fact as a matter of law. *See* N.D.C.C. § 47-19-19 ("The record of any instrument shall be notice of the contents of the instrument, as it appears of record, as to all persons."). [The] Martins are therefore deemed to have known

5

K&L's agreement to convey fee simple title to [the] Martins was conditioned upon K&L acquiring fee simple title from Wachter at some point in time in the future.

A requirement for application of equitable conversion is the existence of a valid contract for sale which could be specifically enforced. *United Bank of Bismarck v. Trout*, 480 N.W.2d 742, 748 (N.D. 1992). The earliest point in time in which [the] Martins could have possibly obtained specific performance of their contract with K&L was when K&L closed on its purchase of the subject property from Wachter on August 1, 2013. Prior to that date, [the] Martins could not have specifically enforced their agreement against K&L as K&L did not yet possess fee simple title to the property. . . .

In this case, K&L did not yet possess fee simple title when it contracted with [the] Martins and had no legal title to retain as security for performance of the Lot Contract. The doctrine of equitable conversion has no application in this, at least until K&L obtained fee simple title and was subject to specific performance under the Lot Contract. Not until that point in time did K&L obtain and retain legal title as security for [the] Martin's performance under the Lot Contract and [the] Martin's could seek specific performance of those obligations. By the time K&L obtained legal title to the property from Wachter, the [DRO] had already been recorded.

[¶20] We agree with the district court's equitable conversion analysis and its conclusion that the doctrine has no application in this case. Martin's contract with K&L could not be specifically enforced until K&L obtained legal title from Wachter. K&L acquired title to Martin's lot in August 2013, after Wachter recorded the DRO. In addition, K&L's contract with Wachter specifically provided that at closing K&L would obtain legal title of the property subject to restrictions of record. *See* 27A Am. Jur. 2d *Equitable Conversion* § 4 (2019) (stating application of equitable conversion is subject to the parties' intentions under the sales contract); *Green v. Gustafson*, 482 N.W.2d 842, 849 (N.D. 1992) (stating a grantor cannot convey a greater interest in the property than the grantor has). We conclude the district court did not err in ruling equitable conversion does not apply and the Martins' property is subject to the DRO.

V

6

[¶21] The Martins claim Wachter is unable to enforce the DRO against them because Wachter has selectively enforced the DRO. They also assert Wachter is precluded from enforcing the DRO because it is unconscionable.

A

[¶22] The Martins' selective enforcement argument is similar to the defense of waiver or acquiescence. "A waiver occurs when a person voluntarily and intentionally relinquishes a known right or privilege." *Estate of Harms*, 2012 ND 62, ¶ 8, 814 N.W.2d 783 (quoting *Pfeifle v. Tanabe*, 2000 ND 219, ¶ 18, 620 N.W.2d 167). The existence of waiver is generally a question of fact, and can be found from an unexplained delay in enforcing contractual rights or accepting performance different than that called for under the contract. *Kessel v. W. Sav. Credit Union*, 463 N.W.2d 629, 631 (N.D. 1990). The right to enforce a restriction or reservation may be lost by waiver. *Allen v. Minot Amusement Corp.*, 312 N.W.2d 698, 702 (N.D. 1981).

[¶23] At trial, the Martins submitted photographs showing alleged violations of the no fence restriction under the DRO by other property owners in the development. The Martins claimed Wachter did not enforce the restriction against the properties depicted in the photos. In response, Wachter claimed it had enforced the no fence restriction against other properties in the development. Wachter also asserted the "no waiver" provision of the DRO precluded the Martins' argument. The "no waiver" provision of the DRO provides: "A waiver of a breach of any of the foregoing conditions or restrictions shall not be construed as a waiver of any succeeding breach of violation thereof or of any other restriction or obligation."

[¶24] The district court discussed the Martins' exhibits and found none of the alleged violations were remotely similar in nature to their dog run. The court found at best, the evidence reflected two possible violations. The court found the Martins failed to show that Wachter had waived the no fence restriction:

> Considering that there are 133 lots in Promontory Point V, the sufferance of violations on two of the lots in the subdivision does not

7

conclusively establish or demonstrate a waiver of the no fence provision with the [DRO]. Furthermore, the evidence presented at trial reflects that Wachter has actively enforced the no fence provision of the [DRO] by sending out violation notices to enforce the fence restriction, and if not corrected, by bringing legal action in another case for violating this same restriction. In addition, Wachter testified that the alleged violations depicted on page five of both Exhibit G and Exhibit E, which appear to this Court to be probable violations, will be investigated.

[¶25] The district court also held that even if the Martins had demonstrated a waiver of the no fence restriction, they were bound by the "no waiver" provision in the DRO. The court concluded the "no waiver" provision was unambiguous and barred the Martins from raising "the defense of acquiescence, waiver or abandonment."

[¶26] We agree with the district court. The "no waiver" provision unambiguously provides a waiver of a violation of a restriction will not be considered a waiver of any subsequent violation. Because the DRO applies to the Martins' property, the Martins are bound by the instrument and are precluded from claiming Wachter waived the no fence restriction. Additionally, the court's findings that the Martins' evidence failed to establish a waiver of the restriction have support in the record and are not clearly erroneous.

B

[¶27] The Martins claim the DRO is unconscionable because the instrument is one-sided and can be amended by Wachter at any time without prior written consent of anyone.

[¶28] The unconscionability doctrine allows courts to deny enforcement of a contract because of procedural abuses arising out of the contract's formation and substantive abuses relating to the contract's terms. *Markwed Excavating, Inc. v. City of Mandan*, 2010 ND 220, ¶ 22, 791 N.W.2d 22. An agreement is unconscionable if it is blatantly one-sided and rankly unfair. *Eberle v. Eberle*, 2009 ND 107, ¶ 18, 766 N.W.2d 477. The decision on whether a contractual provision is unconscionable is a question of

law, but depends on the specific factual circumstances of each case. *Markwed Excavating*, at ¶ 22.

[¶29] Courts consider a two-prong framework to decide whether a contractual provision is unconscionable. *Markwed Excavating*, 2010 ND 220, ¶ 23, 791 N.W.2d 22. The first prong involves procedural unconscionability focusing on factors relating to unfair surprise, oppression, and inequality of bargaining power. *Id.* The second prong involves substantive unconscionability which considers the harshness or one-sidedness of the contractual provision at issue. *Id.*

[¶30] In its discussion of unconscionability, the district court noted this Court has not yet determined whether the unconscionability doctrine applies to restrictive covenants running with the land. The court discussed decisions from other jurisdictions and the enforcement of restrictive covenants enacted by a developer or homeowners association:

> Restrictive covenants in which the developer reserves the right to consent to improvements or modifications in a subdivision is not uncommon. Granting sole discretionary power to an architectural review committee to review requests for variances and enforcement of restrictive covenants is also not uncommon. With regard to the exercise of the power of the architectural review committee, most jurisdictions that have dealt with this issue have found that these covenants are enforceable as long as the determining body makes the decision reasonably and in good faith. The burden is on the party challenging enforcement of the restrictions to show in what manner the developer has illegally exceeded or abused reserved authority and discretion to approve the requested changes.

[¶31] The district court found some procedural unconscionability existed because there was no opportunity for the lot owners in Promontory Point V to negotiate the terms of the DRO. The court found there was no surprise component to the DRO because the restriction on fences was readily discernable in the document, and the evidence presented showed the Martins were aware of the restriction before the final purchase of their lot.

[¶32] The district court also found the DRO was not substantively unconscionable. The court found the Martins failed to show that the Architectural Review Committee

9

acted arbitrarily or in bad faith in denying their request for a variance of the no fence restriction. The court found the evidence showed "the Architectural Review Committee's denial of [the] Martins' request for a dog kennel/run is consistent with its enforcement of the 'no fence' restriction of the [DRO]." The court concluded, "[b]ecause a showing of both procedural and substantive unconscionability is required to declare a contractual provision unconscionable and unenforceable, even if the doctrine of unconscionability applied to restrictive covenants in North Dakota, under the facts of this case, the 'no fence' provision of the [DRO] is not unconscionable."

[¶33] Again, we agree with the district court's analysis and findings relating to unconscionability. We need not decide whether the doctrine of unconscionability applies to restrictive covenants because we hold that, even if it does, the record here does not contain the evidence necessary to establish the DRO or the enforcement of its restrictions was unconscionable.

VI

[¶34] We have considered the parties' remaining arguments and conclude they are either not necessary to our decision or without merit. The judgment is affirmed.

[¶35] Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Lisa Fair McEvers
Gerald W. VandeWalle, C.J.