# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 114

KJ Carpenter aka Kerry Carpenter,                    Plaintiff and Appellant

    v.

Southbay Homeowners Association,
a non-profit corporation,                    Defendant and Appellee

## No. 20240327

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Cynthia M. Feland, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Charles (Casey) L. Chapman, Bismarck, ND, for plaintiff and appellant.

Garrett D. Ludwig, Mandan, ND, for defendant and appellee.

**McEvers, Justice.**

[¶1]   KJ Carpenter appeals from a judgment entered after an order granting a motion for summary judgment. His argument is threefold: first, because the Southbay Homeowners Association's ("Southbay") Architectural Review Committee ("Committee") previously approved metal roofing for other houses, despite a restrictive covenant stating, "All roofing material shall be limited to either cedar shakes, cedar shingles, or earth toned colored shingles approved by the Committee. . . ." (the "restrictive covenant"), without qualification or reservation of future enforcement authority, it could not deny subsequent housing plans requesting metal roofing; second, the Committee's approval of metal roofing in the past amounts to a waiver of the restrictive covenant; and third, the Committee's prior approvals of metal roofing were not in response to breaches invoking the declaration of restrictions and obligations' ("DRO") "no waiver" clause, making the clause inapplicable. Southbay argues the appeal is frivolous and requests costs and attorney's fees. We affirm the summary judgment and deny Southbay's request for costs and attorney's fees.

I

[¶2]   On August 9, 2006, Southbay Development LLC ("Developer") recorded a DRO with the Burleigh County recorder against certain identified real property in Burleigh County, North Dakota. The DRO subjects real property platted into lots to certain conditions, restrictions, and obligations that shall inure to the benefit of, be binding on, and pass with the real property, and all lots shall inure to the benefit of, apply to, and bind the respective successors in title or interest of Developer. The DRO provides in relevant part:

> 2.     **ARCHITECTURAL REVIEW COMMITTEE**: There shall be an Architectural Review Committee . . . consisting of three (3) persons to be appointed by Developer. . . .
> 3.     **RESPONSIBILITIES OF ARCHITECTUAL REVIEW COMMITTEE**:

1

A. The Committee shall be responsible for reviewing the plans for all proposed new construction, additions, or modifications. The Committee shall be responsible to ascertain that the plans and subsequent construction meet the minimum building requirements set forth in this [DRO]. The primary purpose of the Committee shall be to assist property owners in achieving compliance with the building restrictions.

B. Any property owner seeking to construct a new home or other appurtenant structure, or to add to or modify any portion of the exterior of an existing home, shall submit the plans to the Committee for review. . . .

C. No construction, change, modification, or alteration for which plans are to be submitted to the Committee pursuant to Paragraph B immediately above, shall commence until the plans and specifications showing the nature, kind, shape, heights, materials, and location of the same shall have been submitted and *approved in writing by the Committee as to the harmony of external design and location in relation to surrounding structures and topography, size, estimates of costs, and such other factors as the Committee considers necessary, appropriate, and relevant to maintain property values of nearby properties.* In the event the Committee fails to approve or disapprove the design and location plan within thirty (30) days after the plans and specification have been submitted to it, approval will not be required and full compliance with this section of the [DRO] will be deemed to have occurred.

D. *Without limiting the generality of the factors to be considered by the Committee*, the following restrictions shall apply:

    (1) All roofing material shall be limited to either cedar shakes, cedar shingles, or earth toned colored shingles approved by the Committee. Flat roofs will be permitted.

    . . . .

E. In spite of the above provisions, the Committee shall have no affirmative obligation to be certain that all elements of the design comply with the restrictions contained in this [DRO], and no member of the Committee shall have any liability, responsibility, or obligation, whatever, for any decision or lack of a decision, in the carrying out of duties as

2

a member of the Committee. The Committee and its members shall have only an advisory function, and *the sole responsibility for compliance with all of the terms of this [DRO] shall rest with the homeowner*. Each homeowner agrees to save, defend, and hold harmless the Committee and each of its members on account of any activities of the Committee relating to the owner's property or buildings to be constructed on his or her property.

. . . .

6. **NOTICE OF CLAIM OF BREACH**: Developer, or the Committee may at any time that Developer or the Committee deems a breach of [this DRO] has occurred, execute, acknowledge and record in the Office of the Recorder of Burleigh County, a Notice of Claim of Breach setting forth the facts of such breach, describing the lot or lots upon which such breach has occurred and setting forth the name of the owner or owners thereof. . . .

. . . .

22. **NO WAIVER**: A waiver of a breach of any of the foregoing conditions or restrictions shall not be construed as a waiver of any succeeding breach of violation thereof or of any other restriction or obligation.

. . . .

24. **LEGAL ACTION IN THE EVENT OF BREACH**: As to Developer and the owner or owners of any of said lot or lots, including any bona fide purchaser under contract, the foregoing restrictions and obligations shall operate as covenants running with the land and a breach of any of them or a continuance of any such breach may be enjoined, abated, or remedied by appropriate proceedings by Developer, by the Committee, or by [Southbay] as the case may be.

25. **INTERPRETATION OF RESTRICTIONS**: All questions of interpretation or construction of any of the terms or conditions herein shall be resolved by the Committee or [Southbay] and their decision shall be final, binding and conclusive on all of the parties affected.

(Emphasis added.)

[¶3] On January 22, 2021, Carpenter purchased the vacant lot identified as 3917 Downing Street, Lot 3, Block 5, Southbay First Addition, which is subject to the DRO requiring all building plans to be submitted and approved by the Committee before construction begins. Carpenter originally submitted a building proposal including asphalt shingles, which was approved by the Committee. In July 2023, Carpenter submitted an amended construction plan to the Committee requesting approval of a full metal roof, which was denied based on the proposed full metal roofing.

[¶4] Carpenter commenced this action seeking court approval to construct a home with a full metal roof alleging the Committee has allowed metal roofs in the past and has knowingly and intentionally waived the restriction for required roofing materials. Carpenter submitted exhibits to the district court showing ten properties in the development have metal roofs in whole or part, and claimed Southbay approved metal roofing on some houses subject to the DRO. Southbay admitted that eight houses have partial metal roofing, and two have full metal roofs installed without approval. Southbay further admitted that five of the construction proposals that included partial metal roofing were approved by the Committee; a home built with a full metal roof submitted a construction proposal was approved by the Committee, but the proposal did not include a full metal roof; and there were no files or records for the remaining houses that have metal roofing. In regard to the five construction proposals including partial metal roofing materials, Southbay referred to Section 3, C. of the DRO as authority granting it discretion for such approval.

[¶5] Southbay moved for summary judgment, arguing:

> Per the Covenants: (i) The Committee has sole authority to approve or disapprove of construction plans; (ii) full metal roofs are not allowed and/or that is the interpretation of the Committee; (iii) the Committee's interpretation of the Covenants is final and binding; and (iv) the presence of limited metal on a very small percentage of the houses in the Southbay subdivisions does not entitle [Carpenter] to a waiver with regard to his request for a full metal roof.

Carpenter argued Southbay essentially waived the restrictive covenant on roofing materials by approving metal roofing on other homes, and the action of approving metal roofing does not constitute a breach of the restrictive covenant making the "no waiver" clause inapplicable. Southbay argued that Carpenter is bound by the DRO's "no waiver" clause.

[¶6] The district court granted Southbay's motion for summary judgment, holding Carpenter failed to raise any genuine issues of material fact and failed to support his allegation. The district court noted that the restrictive covenant does not include metal among the limited roofing materials allowed and determined the terms of the DRO were clear and unambiguous, Carpenter purchased his lot knowing of the restrictions, and that the "no waiver" clause allowed the Committee to approve metal roofs for other properties while not allowing Carpenter. The court summarized the remaining undisputed facts and entered a judgment. Carpenter timely appealed.

II

[¶7] Our standard for reviewing summary judgments is well-established:

> Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one

5

conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record.

*Wachter Dev., Inc. v. Martin*, 2019 ND 202, ¶ 8, 931 N.W.2d 698.

[¶8] "This Court has said planned unit developments present a modern trend in residential living, and deed restrictions and covenants are vital to the existence and viability of such communities, and if clearly established by proper instruments, are favored by definite public policy." *Wachter*, 2019 ND 202, ¶ 10 (cleaned up). Servitudes, like restrictive covenants, are "created if the owner of the property to be burdened conveys a lot in a general-plan development subject to a recorded declaration of servitudes for the development." *Id.* Section 47-04-24, N.D.C.C., defines covenants running with the land:

> Certain covenants contained in grants of estates in real property are appurtenant to such estates and pass with them so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee in the same manner as if they personally had entered into them. Such covenants are said to run with the land.

Regarding restrictive covenants, landowners "may sell land subject to restrictive covenants so long as they are not contrary to public policy." *Wachter*, ¶ 11. The rules of contract interpretation govern the interpretation of restrictive covenants. *Id.* ¶ 12. The nonperformance of a contractual duty when it is due is a breach of contract. *Berger v. Sellers*, 2023 ND 171, ¶ 21, 996 N.W.2d 329. "Although restrictive covenants are strictly construed in favor of free use of land and against those who seek enforcement, the rule of strict construction will not be employed to defeat the obvious purpose of a restrictive covenant." *Hill v. Lindner*, 2009 ND 132, ¶ 8, 769 N.W.2d 427. "A restrictive covenant must be construed as a whole to ascertain the parties' intent in light of the surrounding circumstances and words must be given their plain and ordinary meaning." *Id.* "All covenants are either 'affirmative' or 'negative.'" 9 Michael A. Wolf, *Powell on Real Property* § 60.06[1] (2022). "An affirmative covenant requires the covenantor either to perform some act, or to continue the status quo as represented; a negative covenant binds the covenantor not to perform an act." *Id.* (footnotes omitted).

6

Affirmative covenants have become particularly important in residential development and may be used to require building or maintenance of a structure in a specified way. *Id.* Likewise, negative covenants are frequently used to prohibit the building or maintenance of structures in specific ways. *Id.* A breach of a covenant has been defined as "[t]he violation of an express or implied promise, usu. in a contract, either to do or not to do an act." *Black's Law Dictionary* 201 (8th ed. 2004). "As a rule, nonobjection to trivial breaches of a restrictive covenant does not result in loss of the right to enforce the covenant by injunction, and acquiescence in violations which are immaterial and do not affect or injure one will not preclude him from restraining violations thereof which would so operate as to cause him to be damaged." *Pool v. Denbeck*, 241 N.W.2d 503, 507 (Neb. 1976) (cleaned up).

## A

[¶9]  We begin by addressing whether the "no waiver" clause applies. The "no waiver" clause of the DRO provides: "A waiver of a breach of any of the foregoing conditions or restrictions shall not be construed as a waiver of any succeeding breach of violation thereof or of any other restriction or obligation." The district court relied on the "no waiver" clause in granting summary judgment holding, even if there was a waiver of the restriction on types of allowed roofing materials, the "no waiver" clause precluded Carpenter from claiming Southbay waived the restrictive covenant. Carpenter does not argue there is a genuine issue of material fact on this issue. Carpenter argues the "no waiver" clause does not apply because there has been no breach when the Committee has previously given approval of metal roofing materials. Carpenter further argues the "no waiver" clause has no relevance because there were no breaches, either by himself or by the lot owners who brought their requests for consideration to the Committee, who interpreted the DRO in a manner and approved metal roofing with varying degrees of metal roof coverage.

[¶10] Carpenter does not dispute that his property is burdened by the DRO or that the restrictive covenant limits the types of roofing materials that may be used. Section 3, B. of the DRO creates an affirmative covenant on the property owner seeking to build to submit building plans to the Committee for review.

7

Under Section 3, C. of the DRO, construction may not commence unless the building plans are approved by the Committee considering a number of factors it determines are necessary and relevant to maintain property values of nearby properties. Section 3, E. of the DRO provides: "In spite of the above provisions, the Committee shall have no affirmative obligation to be certain that all elements of the design comply with the restrictions contained in this [DRO] . . . . The Committee and its members shall have only an advisory function, and the sole responsibility for compliance with all of the terms of this [DRO] shall rest with the homeowner." This provision also creates an affirmative covenant that places on the property owner the responsibility to comply with the DRO. Section 25 of the DRO grants the Committee authority to resolve all questions of interpretation or construction of any of the terms or conditions contained in the DRO. Considering these provisions together, all Southbay property owners, including Carpenter, are obligated to comply with the DRO's terms.

[¶11] The introductory language to Section 3, D. provides that the restrictions should not limit the generality of the factors to be considered by the Committee. Construing subsections C. and D. together, the Committee may consider factors on the harmony of the external designs of a structure it considers appropriate to maintain the property values of nearby properties. Section 3, D. (1) of the DRO— the restrictive covenant—provides: "All roofing material shall be limited to either cedar shakes, cedar shingles, or earth toned colored shingles approved by the Committee." The Committee has interpreted this provision to allow metal roofing in part, but not for an entire roof. Carpenter has not challenged the Committee's authority to interpret the provisions of the DRO. We agree with Carpenter that this interpretation by the Committee when it specifically allowed partial metal roofing would not constitute a breach of the DRO that would trigger the "no waiver" clause because the Committee agreed partial metal roofing is allowed, and all questions of interpretation of the terms of the DRO are final and binding on all parties affected under Section 25 of the DRO. Viewing the evidence in the light most favorable to Carpenter, the Committee's approval of some construction plans including partial metal roofs and its interpretation of the restrictive covenant on partial metal roofing does not trigger the "no waiver" provision as to those homes.

[¶12] The question remains whether the "no waiver" provision has any relevance. Carpenter's argument that there have been no breaches, because all previous metal roofing requests have been approved, ignores the two homes with full metal roofs that were not approved and do not conform with the Committee's interpretation that partial metal roofing is permitted. Submitting construction plans and building structures that are contrary to the DRO, as interpreted by the Committee, is a violation of the express promise to build in accordance with the DRO. Sole responsibility for compliance rests with the homeowner, and the Committee had no affirmative obligation to be certain all elements of the design comply with the restrictions contained in the DRO. It is undisputed that no notice of breach or legal action had been taken by Southbay against the two properties with full metal roofs. Nevertheless, building a house with a full metal roof violates the terms of the DRO. As noted in Section 24 of the DRO, "the foregoing restrictions and obligations shall operate as covenants running with the land and a breach of any of them or a continuance of any such breach *may be enjoined, abated, or remedied by appropriate proceedings* by . . . [Southbay] as the case may be." (Emphasis added.) This provision provides discretion on whether or when a breach of a restriction may be remedied.

[¶13] There is no evidence in the record showing the Committee has approved building proposals requesting a full metal roof. The two homes built with full metal roofs were in violation of the restrictive covenant as interpreted by the Committee. Assuming without deciding those two homeowners are in breach, Southbay has discretion whether to remedy the breach, and the "no waiver" provision is relevant because there has been no action taken to enforce the restrictive covenant on these two homes. The "no waiver" provision unambiguously provides a waiver of a breach of a restrictive covenant will not be a waiver of any subsequent violation. We are not persuaded that the "no waiver" provision has no application here as applied to houses built with a full metal roof.

B

[¶14] Carpenter argues the Committee's approval of metal roofing in the past amounts to a waiver of the restrictive covenant and, because the Committee

9

previously approved metal roofing contrary to the restrictive covenant "without qualification or reservation of future enforcement authority," it could not deny subsequent housing plans requesting metal roofing. Because these two issues are intertwined, we discuss them together.

[¶15] The right to enforce a restriction may be lost by waiver. *Wachter*, 2019 ND 202, ¶ 22. "A waiver occurs when a person voluntarily and intentionally relinquishes a known right or privilege." *Id.* "Waiver may be established either by an express agreement or by inference from acts or conduct." *Pfeifle v. Tanabe*, 2000 ND 219, ¶ 18, 620 N.W.2d 167. Generally, the existence of a waiver is a question of fact, but if circumstances of an alleged waiver are admitted or clearly established and reasonable persons can draw only one conclusion from those circumstances, the existence of waiver is a question of law. *Id.* Whether a waiver has occurred depends on "the facts and circumstances of each particular case." *Allen v. Minot Amusement Corp.*, 312 N.W.2d 698, 702 (N.D. 1981).

[¶16] This Court has not adopted any specific list of factors to consider when determining whether a waiver has occurred involving a DRO. Some of the factors applied by other courts when determining whether a waiver has occurred are the number, nature, and severity of any existing violations, prior acts of enforcement, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant. *Pebble Beach Property Owners' Ass'n. v. Sherer*, 2 S.W.3d 283, 290 (Tex. Ct. App. 1999) (summarizing factors used to determine whether a waiver occurred from various cases). Other courts consider whether those seeking to enforce the covenants had notice of the violation and the period of time in which no action was taken, the extent and kind of violation, the proximity of the violations to those who complain of them, any affirmative approval of the same, whether the violations are temporary or permanent in nature, and the amount of the investment involved. *Denbeck*, 241 N.W.2d at 507.

[¶17] Contractual non-waiver provisions seek to provide a contracting party some assurance that failure to require strict adherence to a contract term will not result in a complete and unintended loss of contract rights. 13 Richard A. Lord, *Williston on Contracts* § 39:36 (4th ed. 2013). A party may waive a condition despite the presence of a non-waiver provision. *See Savre v. Santoyo*, 2015 ND

170, ¶ 21, 865 N.W.2d 419 (discussing various non-waiver provisions and the promisor's power to waive the condition). But, to establish a non-waiver provision is not enforceable, the party asserting a waiver must show a clear intent to waive both the waiver clause and the underlying contract provision. Lord, *supra*, § 39:36; *see also Town of Forest City v. Florence Redevelopment Partners, LLC*, 896 S.E.2d 653, 659 (N.C. Ct. App. 2024) (stating a "no waiver" provision, like any other contract term, is subject to waiver by agreement or conduct during performance).

[¶18] Carpenter relies on *Allen*, 312 N.W.2d 698, to support his argument that "qualification or reservation of future enforcement authority" is required for each instance of the Committee's approval of metal roofing, while Southbay relies on *Wachter*, 2019 ND 202, to argue the "no-waiver" provision precludes a holding in Carpenter's favor. Neither case is dispositive.

[¶19] In *Allen*, an action was brought to enforce use and occupancy restrictions involving a shopping center and seeking injunctive relief. 312 N.W.2d at 699. The district court denied the requested injunction to restrain the defendants from using property in the shopping center as a church. *Id.* In reversing the court, we stated the modification of a restrictive covenant on the allowed land uses and occupancies was approved wherein consent was specifically given "with the understanding that it does not in any way operate as a waiver of any of the rights of Nash Finch" and further conditioned on the continuing responsibility that the use and occupancy of the land conformed to the provisions of the lease. *Id.* at 702. This Court concluded on the particular facts in that case only a limited exception to the restrictive covenant was manifested and the consent did not constitute a waiver. *Id.* There is no mention in *Allen* that the original covenant and restriction found in the contract for deed contained a separate "no waiver" provision. *Allen* does not stand for the proposition that particular language must be used to preserve a "no waiver" provision or a limited exception to a restrictive covenant.

[¶20] In *Wachter*, the developer of a housing development sued the Martins requesting the district court order the removal of a fence that violated a DRO after the Architectural Review Committee denied the Martins' request for a dog

run. 2019 ND 202, ¶¶ 5, 32. The Martins counterclaimed, alleging among other things, that Wachter waived its right to enforce the DRO. *Id.* After trial on this issue, the court made findings that the Martins failed to establish waiver and this Court concluded the findings were not clearly erroneous. *Id.* ¶¶ 24, 26. In addition, this Court said it agreed with the district court that a "no waiver"[1] provision "unambiguously provide[d] a waiver of a violation of a restriction w[ould] not be considered a waiver of any subsequent violation." *Id.* ¶¶ 23, 26. We concluded that because the DRO applied to the subject property, the Martins were bound by the DRO and were precluded from claiming Wachter waived the applicable restrictive covenant. *Id.* ¶ 26. Our agreement with the district court in *Wachter* should be read in light of the facts and arguments made, which are distinguishable from this case. In *Wachter,* there was a breach of the restrictive covenant when the Martins built a fence after their request was denied. The relevant issue in *Wachter* encompassed waiving the restrictive covenant through nonenforcement and that the use of the "no waiver" provision amounted to selective enforcement of the no fence restriction and was unconscionable. *Id.* ¶ 21. No argument was made that the "no waiver" provision did not apply or that Wachter waived the "no waiver" provision.

[¶21] Likewise, here, Carpenter has alleged the "no waiver" provision does not apply and that there has been a waiver of the restrictive covenant regarding roofing materials—but he has not argued or shown a clear intent to waive the "no waiver" provision. In addition, reading the DRO as a whole, nothing requires Southbay or the Committee to use specific language to qualify or reserve future enforcement authority when approving roofing materials or enforcing any other restriction.

[¶22] The district court's determination was overly broad in concluding that, even if there was a waiver of the restrictive covenant, the "no waiver" clause precluded Carpenter from claiming Southbay waived the roofing restriction. As previously discussed, viewing the facts in the light most favorable to Carpenter, the "no waiver" clause does not apply to the eight houses that have partial metal

---

[1] The "no waiver" provision in *Wachter* is identical to the "no waiver" provision in this case.

12

roofing because, either explicitly or implicitly, the Committee's interpretation of the restrictive covenant allows for houses to be constructed with partial metal roofs. Had Carpenter submitted a construction plan including a partial metal roof, his argument may have some merit. However, the "no waiver" clause applies to his request because the two houses constructed with full metal roofs were in violation of the DRO as interpreted by the Committee and Southbay has not sought to enforce the roofing materials provision.

[¶23] Carpenter has not raised a genuine issue of material fact supporting a waiver of both the restrictive covenant and the "no waiver" clause. The undisputed facts were admitted or clearly established and reasonable persons can draw only one conclusion from those circumstances. Reading the DRO as a whole and based on the undisputed facts and circumstances of this case, there was no waiver of the "no waiver" provision as it pertains to the restriction on roofing materials for a full metal roof as interpreted by the Committee as a matter of law. The district court did not err in granting summary judgment.

III

[¶24] Southbay argues Carpenter's appeal is "flagrantly groundless," asserting an award of costs and attorney's fees is warranted.

[¶25] Under N.D.R.App.P. 38, this Court "may award just damages and single or double costs, including reasonable attorney's fees," if it determines an appeal is frivolous. "When reviewing the frivolous nature of an appeal, we consider whether there is such a complete absence of facts and law that a reasonable person might not have thought this Court would render a favorable judgment on appeal." *Gerving v. Gerving*, 2021 ND 50, ¶ 8, 956 N.W.2d 403 (cleaned up). An appeal that is flagrantly groundless or devoid of merit is frivolous. *Harty Ins., Inc. v. Holmes*, 2022 ND 45, ¶ 2, 971 N.W.2d 400. "Where the appellant's arguments are both factually and legally so devoid of merit that he should have been aware of the impossibility of success on appeal, an assessment of costs and attorney fees is proper." *In re Est. of Nelson*, 2018 ND 118, ¶ 13, 910 N.W.2d 856. Affirming a summary judgment does not necessarily mean the claim is frivolous.

13

*Lucas v. Riverside Park Condos. Unit Owners Ass'n*, 2009 ND 217, ¶ 47, 776 N.W.2d 801.

[¶26] We conclude there is not such a complete lack of facts and law that a reasonable person could not have thought this Court would render Carpenter a favorable judgment. The summary judgment is affirmed and Southbay's request for costs and attorney's fees is denied.

[¶27] Jon J. Jensen, C.J.
    Lisa Fair McEvers
    Jerod E. Tufte
    Douglas A. Bahr
    William A. Herauf, D.J.

[¶28] The Honorable William A. Herauf, D.J., sitting in place of Crothers, J., disqualified.